FILED

2010 OCT 21  PM 2: 42

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2010 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 10-1031(A)-AHM |
| Plaintiff, | ) | F I R S T |
| | ) | S U P E R S E D I N G |
| v. | ) | I N D I C T M E N T |
| | ) | |
| ENRIQUE FAUSTINO AGUILAR NORIEGA, | ) | [18 U.S.C. § 371: Conspiracy; |
| ANGELA MARIA GOMEZ AGUILAR, | ) | 15 U.S.C. § 78dd-2: Foreign |
| aka "Angela Maria | ) | Corrupt Practices Act; 18 U.S.C. |
| Gomez Aguilar," | ) | § 1956(h): Conspiracy to Launder |
| aka "Angela Maria Cepeda | ) | Monetary Instruments; 18 U.S.C. |
| Gomez Aguilar," | ) | § 1956(a)(1)(B)(i): Money |
| aka "Angela Gomez | ) | Laundering; 18 U.S.C. § 2: |
| Cepeda," | ) | Aiding and Abetting and Causing |
| LINDSEY MANUFACTURING | ) | Acts To Be Done; 18 U.S.C. |
| COMPANY, | ) | § 981(a)(1)(C), 21 U.S.C. § 853, |
| KEITH E. LINDSEY, and | ) | and 28 U.S.C. § 2461(c): |
| STEVE K. LEE, | ) | Criminal Forfeiture; 18 U.S.C. |
| | ) | § 982(a)(1) and 21 U.S.C. § 853: |
| Defendants. | ) | Criminal Forfeiture] |
| | ) | |
| | ) | |
| | ) | |

The Grand Jury charges:

<u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this Indictment:

A.   RELEVANT STATUTES

1.   The Foreign Corrupt Practices Act of 1977 ("FCPA"), as

DMM:dmm
NJM:njm

amended, Title 15, United States Code, Sections 78dd-2, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful for certain persons and business entities defined as "domestic concerns," or officers, employees, or agents of those domestic concerns, to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value to a foreign government official for the purpose of obtaining or retaining business for or with, or directing business to, any person.

2.   Article 222 of the Federal Penal Code of the United Mexican States ("Mexico") prohibited a public servant from soliciting or receiving money or gifts for himself or another, or accepting a promise, in exchange for an act or omission, whether lawful or unlawful, in relation to his public duties.  Article 222 also prohibited any person from giving or offering money or gifts in order for any public servant to commit an act or omission, whether lawful or unlawful, in relation to his public duties.

B.   RELEVANT PERSONS AND ENTITIES

3.   Comisión Federal de Electricidad ("CFE") was an electric utility company owned by the government of Mexico. During the time period relevant to this Indictment, CFE was responsible for supplying electricity to all of Mexico other than Mexico City.  CFE contracted with Mexican and foreign companies for goods and services to help supply electricity services to its customers.

4.   Official 1 was a Mexican citizen who held a senior level position at CFE.  Official 1 became the Sub-Director of

1   Generation for CFE in 2002 and the Director of Operations in

2   2007.  Official 1's position at CFE made him a "foreign

3   official," as that term is defined in the FCPA, 15 U.S.C. § 78dd-

4   2(h)(2).

5       5.    Official 2 was a Mexican citizen who also held a senior

6   level position at CFE.  Official 2 was the Director of Operations

7   at CFE until that position was taken over by Official 1 in 2007.

8   Official 2's position at CFE made him a "foreign official," as

9   that term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(2).

10      6.    Defendant LINDSEY MANUFACTURING COMPANY ("LINDSEY

11  MANUFACTURING") was a privately held company incorporated in

12  California and headquartered in Azusa, California.  As such,

13  defendant LINDSEY MANUFACTURING was a "domestic concern" as that

14  term is defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).  Defendant

15  LINDSEY MANUFACTURING manufactured emergency restoration systems

16  ("ERSs") and other equipment that was used by electrical utility

17  companies.  Defendant LINDSEY MANUFACTURING maintained several

18  bank accounts at U.S. banks, including Preferred Bank and United

19  Bank.  Many of defendant LINDSEY MANUFACTURING's clients were

20  foreign, state-owned utilities, including CFE, which was one of

21  defendant LINDSEY MANUFACTURING's most significant customers.

22  Defendant LINDSEY MANUFACTURING conducted business in a number of

23  its foreign markets through sales representatives.

24      7.    Defendant KEITH E. LINDSEY ("LINDSEY") was the

25  President of defendant LINDSEY MANUFACTURING.  In that position,

26  defendant LINDSEY had ultimate authority over all of defendant

27  LINDSEY MANUFACTURING's operations.  Defendant LINDSEY also had a

28  majority ownership interest in defendant LINDSEY MANUFACTURING

-3-

and was signatory authority over defendant LINDSEY
MANUFACTURING's bank accounts.  Defendant LINDSEY was a citizen
of the United States.  In light of the foregoing, defendant
LINDSEY was a "domestic concern" and an officer, employee, and
agent of a domestic concern, as those terms are defined in the
FCPA, 15 U.S.C. § 78dd-2(h)(1).

8.    Defendant STEVE K. LEE ("LEE") was the Vice President
and Chief Financial Officer of defendant LINDSEY MANUFACTURING.
In that position, defendant LEE controlled defendant LINDSEY
MANUFACTURING's finances and had signatory authority over
defendant LINDSEY MANUFACTURING's bank accounts.  Defendant Lee
was also a citizen of the United States.  In light of the
foregoing, defendant LEE was a "domestic concern" and an officer,
employee, and agent of a domestic concern, as those terms are
defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

9.    Grupo Internacional De Asesores S.A. ("Grupo") was a
company incorporated in Panama and headquartered in Mexico.
Grupo maintained a brokerage account in Houston, Texas, at Global
Financial Services, Inc. ("Global Financial").  Grupo's purported
business was to provide sales representation services for
companies like defendant LINDSEY MANUFACTURING that had business
with CFE.  Grupo was defendant LINDSEY MANUFACTURING's sales
representative in Mexico and received a percentage of the revenue
defendant LINDSEY MANUFACTURING received from its contracts with
CFE.  Defendant LINDSEY MANUFACTURING obtained multiple contracts
with CFE while using Grupo as its sales representative.  In light
of the foregoing, Grupo was an agent of a domestic concern, as
those terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

-4-

10.   Defendant ENRIQUE FAUSTINO AGUILAR NORIEGA ("ENRIQUE AGUILAR") was born in Mexico and was a lawful permanent resident of the United States.  Defendant ENRIQUE AGUILAR was a Director of Grupo and was hired by defendant LINDSEY MANUFACTURING to obtain contracts from CFE.  In light of the foregoing, defendant ENRIQUE AGUILAR was a "domestic concern" and an agent of a domestic concern, as those terms are defined in the FCPA, 15 U.S.C. § 78dd-2(h)(1).

11.   Defendant ANGELA MARIA GOMEZ AGUILAR, also known as ("aka") "Angela Maria Gomez Aguilar," "Angela Maria Cepeda Gomez Aguilar," "Angela Gomez Cepeda" ("ANGELA AGUILAR"), was a citizen of Mexico and was married to defendant ENRIQUE AGUILAR. Defendant ANGELA AGUILAR served as an Officer and a Director of Grupo.  In that position, defendant ANGELA AGUILAR managed Grupo's finances and was the sole signatory on Grupo's Global Financial brokerage account.

12.   Sorvill International S.A. ("Sorvill") was a company incorporated in Panama and headquartered in Mexico.  Sorvill maintained bank accounts in Germany and Switzerland.  Like Grupo, Sorvill's purported business was to provide sales representation for companies that had business with CFE.  Defendant ENRIQUE AGUILAR was also the Director of Sorvill, and defendants ENRIQUE AGUILAR and ANGELA AGUILAR both had signatory authority over Sorvill's bank accounts.

//

//

COUNT ONE

[18 U.S.C. § 371]

1.    The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

A.    THE OBJECT OF THE CONSPIRACY

2.    Beginning in or around February 2002, and continuing through in or around March 2009, in Los Angeles County, within the Central District of California, and elsewhere, defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, and LEE, together with co-conspirator Grupo, and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offense against the United States:

To willfully make use of mails and means and instrumentalities of interstate commerce, corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official and any person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised, directly and indirectly, to any foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities

-6-

1 thereof to affect and influence acts and decisions of such

2 government and instrumentalities, in order to assist defendants

3 ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, and LEE,

4 coconspirator Grupo, and others in obtaining and retaining

5 business for and with, and directing business to, defendant

6 LINDSEY MANUFACTURING, in violation of Title 15, United States

7 Code, Sections 78dd-2(a).

8 B.   THE MANNER AND MEANS OF THE CONSPIRACY

9       3.   The object of the conspiracy was carried out, and was

10 to be carried out, in substance, as follows:

11            a.   Defendants LINDSEY MANUFACTURING, LINDSEY and LEE

12 would retain defendant ENRIQUE AGUILAR as defendant LINDSEY

13 MANUFACTURING's sales representative in Mexico because of his

14 close personal relationship with and influence over Official 1.

15            b.   Defendants LINDSEY MANUFACTURING, LINDSEY and LEE

16 would agree to pay defendant ENRIQUE AGUILAR a thirty percent

17 commission on all of the goods and services defendant LINDSEY

18 MANUFACTURING sold to CFE, a commission significantly higher than

19 the commission defendant LINDSEY MANUFACTURING had paid its

20 previous sales representative in Mexico, knowing that all or a

21 portion of that money would be used to pay Official 1 and others

22 at CFE bribes in exchange for CFE awarding defendant LINDSEY

23 MANUFACTURING contracts.

24            c.   Defendants LINDSEY MANUFACTURING, LINDSEY, LEE, and

25 ENRIQUE AGUILAR would cause the thirty percent commission to be

26 paid into Grupo's brokerage account at Global Financial, a

27 commission significantly higher than the commission defendant

28 LINDSEY MANUFACTURING paid to its previous sales representative

in Mexico, while knowing defendant ENRIQUE AGUILAR had a close personal relationship with Official 1 and would use all or a portion of the thirty percent commission to pay Official 1 and others bribes in exchange for CFE awarding defendant LINDSEY MANUFACTURING contracts.

       d.   Defendants LINDSEY MANUFACTURING, LINDSEY, and LEE would cause the cost of the goods and services defendant LINDSEY MANUFACTURING sold to CFE to be increased by thirty percent to ensure that the added cost of paying the thirty percent commission was absorbed by CFE and not defendant LINDSEY MANUFACTURING.

       e.   When defendant LINDSEY MANUFACTURING was awarded contracts by CFE, defendant ENRIQUE AGUILAR would cause invoices from Grupo to be submitted to defendant LINDSEY MANUFACTURING totaling approximately thirty percent of the money CFE paid to defendant LINDSEY MANUFACTURING.

       f.   In order to conceal the fact that defendant LINDSEY MANUFACTURING was paying a thirty percent commission on all of the money it received from CFE to Grupo, defendant ENRIQUE AGUILAR would at times cause the invoices to falsely state that half of the money being paid to Grupo (that is, fifteen percent of the contract price) was a commission and that the remaining fifteen percent was for other services purportedly rendered by Grupo.

       g.   Defendants LINDSEY MANUFACTURING, LINDSEY, and LEE would cause the money requested in the fraudulent invoices to be wired into Grupo's brokerage account at Global Financial, while knowing that all or a portion of the money would be used to pay

-8-

bribes to Official 1 and others at CFE in exchange for the award
of CFE contracts.

C.   OVERT ACTS

4.   In furtherance of the conspiracy and to accomplish its
object, defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING,
LINDSEY and LEE, together with others known and unknown to the
Grand Jury, committed and willfully caused others to commit the
following overt acts, among others, in the Central District of
California, and elsewhere:

*The Agreement*

Overt Act No. 1:   In or around 2002, defendants LINDSEY
and LEE entered into an agreement with defendant ENRIQUE AGUILAR
on behalf of defendant LINDSEY MANUFACTURING in which defendant
LINDSEY MANUFACTURING agreed to hire defendant ENRIQUE AGUILAR as
its sales representative in Mexico and to pay him a thirty
percent commission on all of the contracts that defendant LINDSEY
MANUFACTURING obtained from CFE.

*The Fraudulent Invoices*

5.   On or about the following dates, defendant ENRIQUE
AGUILAR caused the following invoices to be submitted from Grupo
to defendant LINDSEY MANUFACTURING, fraudulently stating the
following amounts were owed by defendant LINDSEY MANUFACTURING to
Grupo for commissions and for services rendered by Grupo to
defendant LINDSEY MANUFACTURING:

| *Overt Act* | *Date* | *Inv.* | *Amount* |
|---|---|---|---|
| Overt Act No. 2: | Aug. 1, 2002 | 101 | $174,326.06 |
| Overt Act No. 3: | Aug. 2, 2002 | 102 | $174,326.06 |
| Overt Act No. 4: | Sept. 8, 2003 | 111 | $84,012.11 |

-9-

| | | | |
|---|---|---|---|
| Overt Act No. 5: | Oct. 2, 2003 | 112 | $86,111.00 |
| Overt Act No. 6: | Oct. 2, 2003 | 113 | $149,663.00 |
| Overt Act No. 7: | Oct. 21, 2003 | 114 | $149,663.00 |
| Overt Act No. 8: | Oct. 31, 2003 | 116 | $84,459.00 |
| Overt Act No. 9: | Nov. 28, 2003 | 117 | $44,162.00 |
| Overt Act No. 10: | Nov. 28, 2003 | 118 | $44,162.00 |
| Overt Act No. 11: | Dec. 19, 2003 | 119 | $112,079.42 |
| Overt Act No. 12: | Dec. 19, 2003 | 120 | $112,079.42 |
| Overt Act No. 13: | Dec. 19, 2003 | 121 | $54,251.10 |
| Overt Act No. 14: | Dec. 19, 2003 | 122 | $54,251.10 |
| Overt Act No. 15: | June 25, 2004 | 123 | $53,778.00 |
| Overt Act No. 16: | Dec. 21, 2004 | 126 | $134,061.00 |
| Overt Act No. 17: | Sept. 26, 2006 | 132 | $109,879.38 |
| Overt Act No. 18: | Sept. 28, 2006 | 133 | $42,104.40 |
| Overt Act No. 19: | Oct. 25, 2006 | 134 | $92,116.74 |
| Overt Act No. 20: | Nov. 10, 2006 | 135 | $1,567,416.00 |
| Overt Act No. 21: | Nov. 21, 2006 | 137 | $1,567,416.00 |
| Overt Act No. 22: | Jan. 10, 2007 | 139 | $121,642.00 |
| Overt Act No. 23: | Jan. 17, 2007 | 140 | $100,917.00 |
| Overt Act No. 24: | Jan. 17, 2007 | 141 | $80,242.00 |
| Overt Act No. 25: | Feb. 9, 2007 | 142 | $115,879.56 |
| Overt Act No. 26: | July 2, 2007 | 143 | $15,348.50 |
| Overt Act No. 27: | Sept. 13, 2007 | 144 | $260,468.00 |
| Overt Act No. 28: | Oct. 10, 2007 | 145 | $9,155.00 |
| Overt Act No. 29: | March 28, 2008 | 148 | $230,333.00 |
| Overt Act No. 30: | March 28, 2008 | 149 | $13,078.00 |

*The Bribe Payments*

6.   On or about the following dates, defendants LEE and

-10-

LINDSEY, on behalf of defendant LINDSEY MANUFACTURING, caused the
following wire transfers to be made from the accounts of
defendant LINDSEY MANUFACTURING to Grupo's Global Financial
brokerage account in the following approximate amounts, knowing
that all or a portion of the money would be used to pay bribes to
Official 1 and others at CFE in exchange for the award of CFE
contracts:

| Overt Act | Date | Amount |
|---|---|---|
| Overt Act No. 31: | Aug. 1, 2002 | $174,326.06 |
| Overt Act No. 32: | Aug. 5, 2002 | $174,326.06 |
| Overt Act No. 33: | Sept. 9, 2003 | $84,012.11 |
| Overt Act No. 34: | Oct. 3, 2003 | $235,744.00 |
| Overt Act No. 35: | Oct. 24, 2003 | $149,663.00 |
| Overt Act No. 36: | Nov. 10, 2003 | $84,459.00 |
| Overt Act No. 37: | Dec. 1, 2003 | $84,459.00 |
| Overt Act No. 38: | Dec. 8, 2003 | $44,162.00 |
| Overt Act No. 39: | Dec. 9, 2003 | $44,162.00 |
| Overt Act No. 40: | Dec. 24, 2003 | $112,079.42 |
| Overt Act No. 41: | Dec. 23, 2003 | $54,251.10 |
| Overt Act No. 42: | Dec. 30, 2003 | $166,600.52 |
| Overt Act No. 43: | July 15, 2004 | $53,778.00 |
| Overt Act No. 44: | Jan. 19, 2005 | $134,061.00 |
| Overt Act No. 45: | Oct. 2, 2006 | $109,879.38 |
| Overt Act No. 46: | Oct. 10, 2006 | $42,104.40 |
| Overt Act No. 47: | Nov. 1, 2006 | $92,116.74 |
| Overt Act No. 48: | Nov. 17, 2006 | $1,567,416.00 |
| Overt Act No. 49: | Nov. 28, 2006 | $1,567,416.00 |
| Overt Act No. 50: | Jan. 12, 2007 | $121,642.00 |

| | | |
|---|---|---|
| Overt Act No. 51: | Jan. 18, 2007 | $100,917.00 |
| Overt Act No. 52: | Jan. 24, 2007 | $80,242.00 |
| Overt Act No. 53: | Feb. 14, 2007 | $115,879.56 |
| Overt Act No. 54: | July 5, 2007 | $15,348.50 |
| Overt Act No. 55: | Sept. 17, 2007 | $260,468.00 |
| Overt Act No. 56: | Oct. 12, 2007 | $9,155.00 |
| Overt Act No. 57: | April 10, 2008 | $230,333.00 |
| Overt Act No. 58: | April 22, 2008 | $27,000.00 |
| Overt Act No. 59: | May 23, 2008 | $13,078.00 |

### *The Benefits to the Foreign Officials*

Overt Act No. 60:   On or about July 13, 2006, defendant ENRIQUE AGUILAR and another individual known to the Grand Jury caused a letter to be submitted to Global Financial authorizing the transfers of funds from Grupo's Global Financial brokerage account to pay the credit card bills for Official 1's American Express credit card "in full every month, until further notice," which included the false explanation that Official 1 was the "brother-in-law of company owner."

Overt Act No. 61:   On or about August 23, 2006, defendant ENRIQUE AGUILAR aided Official 1 in purchasing an 82-foot yacht named the *Dream Seeker* for $1,800,010, which Official 1 later accepted as the true purchaser of the yacht.

Overt Act No. 62:   On or about August 24, 2006, defendant ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales Trust from Sorvill's Swiss bank account in the amount of approximately $360,000, as partial payment for the *Dream Seeker* yacht purchased for Official 1.

Overt Act No. 63:   On or about August 28, 2006, defendant

-12-

ENRIQUE AGUILAR and another individual known to the Grand Jury
caused the issuance of a check to South Shore Yacht Sales Trust
from Grupo's Global Financial brokerage account for approximately
$540,000, as partial payment for the *Dream Seeker* yacht purchased
for Official 1.

Overt Act No. 64:   On or about September 8, 2006, defendant
ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales
Trust from Sorvill's Swiss bank account in the amount of
approximately $450,000, as partial payment for the *Dream Seeker*
yacht purchased for Official 1.

Overt Act No. 65:   On or about November 30, 2006, defendant
ENRIQUE AGUILAR and another individual known to the Grand Jury
caused a wire transfer in the amount of approximately $250,000
from Grupo's Global Financial brokerage account to a Banco
Popular account ending xx370, which falsely stated that the wire
transfer was going to Official 2's female relative for "payment
for professional services advice."

Overt Act No. 66:   In or around November 2006, defendant
ENRIQUE AGUILAR caused a signed International Sales
Representative Agreement to be submitted to Global Financial,
which falsely stated that Official 2's female relative was a
sales representative for Grupo.

Overt Act No. 67:   On or about November 30, 2006, defendant
ENRIQUE AGUILAR and another individual known to the Grand Jury
caused a wire transfer in the amount of approximately $250,000 to
be sent from Grupo's Global Financial brokerage account to a
Banco Popular account ending xx581, which falsely stated that the
wire transfer was going to Official 2's male relative for

-13-

"payment for professional services advice."

Overt Act No. 68:   In or around November 2006, defendant ENRIQUE AGUILAR caused a signed International Sales Representative Agreement to be submitted to Global Financial, which falsely stated that Official 2's male relative was a sales representative for Grupo.

Overt Act No. 69:   On or about February 16, 2007, defendant ENRIQUE AGUILAR and another individual known to the Grand Jury caused the issuance of a check to Ferrari of Beverly Hills from Grupo's Global Financial brokerage account for approximately $297,500 to purchase a 2005 Ferrari Spyder (the "Ferrari") for Official 1.

Overt Act No. 70:   In or around February 2007, defendant ENRIQUE AGUILAR and another individual known to the Grand Jury caused a statement of facts, which authorized Official 1 to pick up the Ferrari titled in defendant ENRIQUE AGUILAR's name, to be submitted to Ferrari of Beverly Hills.

Overt Act No. 71:   In or around March 2007, defendant ENRIQUE AGUILAR caused a car insurance policy on the Ferrari to be issued under his own name but listed Official 1 as a driver of the Ferrari on the policy.

Overt Act No. 72:   On or about March 9, 2007, defendant ENRIQUE AGUILAR caused a wire transfer in the amount of approximately $45,000 from Sorvill's Swiss bank account to a Banner Bank account number ending in xx227 to be applied to an escrow on behalf of Official 1's half brother CM.

Overt Act No. 73:   On or about March 14, 2007, defendant ENRIQUE AGUILAR caused a wire transfer in the amount of

-14-

approximately $50,000 from Sorvill's Swiss bank account to a
Banco Popular account number ending in xx370, which stated that
the transfer was going to Official 2's mother as a "consulting
fee."

Overt Act No. 74:   On or about March 14, 2007, defendant
ENRIQUE AGUILAR caused a wire transfer in the amount of
approximately $50,000 from Sorvill's Swiss bank account to a
Banco Popular account number ending in xx581, which stated that
the transfer was going to Official 2's brother as a "consulting
fee."

COUNTS TWO THROUGH SIX

[15 U.S.C. § 78dd-2(a); 18 U.S.C. § 2]

1.   The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

2.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, and LEE, who were domestic concerns and officers, employees and agents of a domestic concern within the meaning of the FCPA, willfully made use of, and aided, abetted, and caused others to make use of, the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value to any foreign official, and to any person, while knowing that all or a portion of the money and thing of value would be and had been offered, given, and promised, directly and indirectly, to any foreign official for the purposes of: (i) influencing acts and decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his influence with a foreign government and instrumentalities thereof to affect and influence acts and decisions of such government and instrumentalities, in order to assist defendants ENRIQUE AGUILAR,

-16-

LINDSEY MANUFACTURING, LINDSEY, and LEE in obtaining and
retaining business for and with, and directing business to
defendant LINDSEY MANUFACTURING, as follows:

| COUNT | DATE | MEANS AND INSTRUMENTALITIES OF INTERSTATE AND INTERNATIONAL COMMERCE |
|-------|------|---------------------------------------------------------------------|
| TWO | 11/1/2006 | Wire transfer of approximately $92,116.74 from defendant LINDSEY MANUFACTURING's Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| THREE | 11/17/2006 | Wire transfer of approximately $1,567,416.00 from defendant LINDSEY MANUFACTURING's Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| FOUR | 11/28/2006 | Wire transfer of approximately $1,567,416.00 from defendant LINDSEY MANUFACTURING's Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| FIVE | 2/9/2007 | Wire transfer of approximately $115,879.56 from defendant LINDSEY MANUFACTURING'S Preferred Bank account in California to Grupo's Global Financial brokerage account in Texas |
| SIX | 9/17/2007 | Wire transfer of approximately $260,468 from defendant LINDSEY MANUFACTURING's California United Bank account in California to Grupo's Global Financial brokerage account in Texas |

COUNT SEVEN

[18 U.S.C. § 1956(h)]

1.   The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

A.   THE OBJECTS OF THE CONSPIRACY

2.   From in or around 2002, through in or around March 2009, the exact dates being unknown to the Grand Jury, in Los Angeles County, in the Central District of California, and elsewhere, defendants ENRIQUE AGUILAR and ANGELA AGUILAR did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, namely:

a.   knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, to conduct financial transactions affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.   to knowingly transport, transmit, and transfer, and willfully cause others to transport, transmit, and transfer,

-18-

1  monetary instruments and funds from a place in the United States

2  to places outside the United States, intending that each of the

3  transactions, in whole and in part, promote the carrying on of a

4  specified unlawful activity, in violation of Title 18, United

5  States Code Section 1956(a)(2)(A); and

6          c.   to engage in a monetary transaction by, through,

7  and to a financial institution, in and affecting interstate and

8  international commerce, in criminally derived property that was

9  of a value greater than $10,000.00, that is, the deposit,

10 withdrawal, transfer and exchange of U.S. currency, funds, and

11 monetary instruments, such property having been derived from

12 specified unlawful activity, in violation of Title 18, United

13 States Code, Section 1957.

14 B.   THE MANNER AND MEANS OF THE CONSPIRACY

15      3.   The objects of the conspiracy were carried out, and to

16 be carried out, in substance, as follows:

17      4.   Defendant ENRIQUE AGUILAR and others known and unknown

18 to the Grand Jury would cause bribes to Official 1 and Official 2

19 to be paid into Grupo's brokerage account at Global Financial, in

20 violation of the Foreign Corrupt Practices Act, Title 15, United

21 States Code, Section 78dd-2, and in violation of the criminal

22 bribery laws of Mexico, namely, Article 222 of the Federal Penal

23 Code of the United Mexican States.

24      5.   Defendants ENRIQUE AGUILAR and ANGELA AGUILAR would

25 take a portion of the money paid to Grupo's brokerage account at

26 Global Financial and engage in monetary transactions designed to:

27 (1) conceal the source of the moneys and the fact that they were

28 bribes to Official 1 and Official 2; (2) promote the payment of

1   bribes through international monetary transactions for the

2   benefit of Official 1 and Official 2; and (3) engage in monetary

3   transactions of a value greater than $10,000 using criminally

4   derived property.

5   C.    OVERT ACTS

6         6.    In furtherance of the conspiracy and to accomplish its

7   objects, defendants ENRIQUE AGUILAR and ANGELA AGUILAR, together

8   with others known and unknown to the Grand Jury, committed and

9   willfully caused others to commit the following overt acts, among

10   others, in the Central District of California, and elsewhere:

11        Overt Act No. 1:    On or about July 13, 2006, defendant

12   ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a letter to

13   be submitted to Global Financial authorizing the transfers of

14   funds from Grupo's Global Financial brokerage account to pay the

15   credit card bills for Official 1's American Express credit card

16   "in full every month, until further notice," which included the

17   false explanation that Official 1 was the "brother-in-law of

18   company owner."

19        Overt Act No. 2:    On or about August 23, 2006, defendant

20   ENRIQUE AGUILAR aided Official 1 in purchasing an 82-foot yacht

21   named the *Dream Seeker* for $1,800,010, which Official 1 later

22   accepted as the true purchaser of the yacht.

23        Overt Act No. 3:    On or about August 24, 2006, defendant

24   ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales

25   Trust from Sorvill's Swiss bank account in the amount of

26   approximately $360,000, as partial payment for the *Dream Seeker*

27   yacht purchased for Official 1.

28

1    <u>Overt Act No. 4:</u>    On or about August 28, 2006, defendant

2  ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused the issuance

3  of a check to South Shore Yacht Sales Trust from Grupo's Global

4  Financial brokerage account for approximately $540,000, as

5  partial payment for the *Dream Seeker* yacht purchased for Official

6  1.

7    <u>Overt Act No. 5:</u>    On or about September 8, 2006, defendant

8  ENRIQUE AGUILAR caused a wire transfer to South Shore Yacht Sales

9  Trust from Sorvill's Swiss bank account in the amount of

10  approximately $450,000, as partial payment for the *Dream Seeker*

11  yacht purchased for Official 1.

12    <u>Overt Act No. 6:</u>    On or about November 30, 2006, defendant

13  ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a wire

14  transfer in the amount of approximately $250,000 to be sent from

15  Grupo's Global Financial brokerage account to a Banco Popular

16  account ending xx370, which falsely stated that the wire transfer

17  was going to Official 2's female relative for "payment for

18  professional services advice."

19    <u>Overt Act No. 7:</u>    In or around November 2006, defendant

20  ENRIQUE AGUILAR caused a signed International Sales

21  Representative Agreement to be submitted to Global Financial,

22  which falsely stated that Official 2's female relative was a

23  sales representative for Grupo.

24    <u>Overt Act No. 8:</u>    On or about November 30, 2006, defendant

25  ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a wire

26  transfer in the amount of approximately $250,000 from Grupo's

27  Global Financial brokerage account to a Banco Popular account

28  ending xx581, which falsely stated that the wire transfer was

1  going to Official 2's male relative for "payment for professional
2  services advice."

3      Overt Act No. 9:    In or around November 2006, defendant
4  ENRIQUE AGUILAR caused a signed International Sales
5  Representative Agreement to be submitted to Global Financial,
6  which falsely stated that Official 2's male relative was a sales
7  representative for Grupo.

8      Overt Act No. 10:   On or about February 16, 2007, defendant
9  ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused the issuance
10 of a check to Ferrari of Beverly Hills from Groupo's Global
11 Financial brokerage account for approximately $297,500 to
12 purchase a 2005 Ferrari Spyder (the "Ferrari") for Official 1.

13     Overt Act No. 11:   In or around February 2007, defendant
14 ENRIQUE AGUILAR and defendant ANGELA AGUILAR caused a statement
15 of facts, which authorized Official 1 to pick up the Ferrari
16 titled in defendant ENRIQUE AGUILAR's name, to be submitted to
17 Ferrari of Beverly Hills.

18     Overt Act No. 12:   In or around March 2007, defendant
19 ENRIQUE AGUILAR caused a car insurance policy on the Ferrari to
20 be issued under his own name but listed Official 1 as a driver of
21 the Ferrari on the policy.

22     Overt Act No. 13:   On or about March 9, 2007, defendant
23 ENRIQUE AGUILAR caused a wire transfer in the amount of
24 approximately $45,000 from Sorvill's Swiss bank account to a
25 Banner Bank account number ending in xx227 to be applied to an
26 escrow on behalf of Official 1's half brother CM.

27     Overt Act No. 14:   On or about March 14, 2007, defendant
28 ENRIQUE AGUILAR caused a wire transfer in the amount of

approximately $50,000 from Sorvill's Swiss bank account to a Banco Popular account number ending in xx370, which stated that the transfer was going to Official 2's mother as a "consulting fee."

Overt Act No. 15:   On or about March 14, 2007, defendant ENRIQUE AGUILAR caused a wire transfer in the amount of approximately $50,000 from Sorvill's Swiss bank account to a Banco Popular account number ending in xx581, which stated that the transfer was going to Official 2's brother as a "consulting fee."

COUNT EIGHT

[18 U.S.C. § 1956(a)(1)(B)(i); 18 U.S.C. § 2]

1.    The Grand Jury incorporates and realleges the allegations contained in paragraphs 1 through 12 in the Introductory Allegations above as though fully set forth in their entirety here.

2.    On or about the following date, in Los Angeles County, in the Central District of Los Angeles, and elsewhere, defendants ENRIQUE AGUILAR and ANGELA AGUILAR, together with and aided and abetted by others known and unknown to the Grand Jury, knowing that the property involved in the financial transaction described below represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, the following financial transaction affecting interstate commerce, which transaction in fact involved the proceeds of specified unlawful activity, namely, a violation of the Foreign Corrupt Practices Act and a violation of the criminal bribery laws of Mexico, as set forth in Article 222 of the Federal Penal Code of the United Mexican States, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| DATE | FINANCIAL TRANSACTION |
|------|----------------------|
| 2/16/07 | The deposit of a check issued from Grupo's Global Financial brokerage account ending XX964 for approximately $297,500 into a Pacific Western Bank account ending in XX200 for the purchase of a Ferrari in Beverly Hills in California. |

-24-

NOTICE OF FORFEITURE I

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); 21 U.S.C. § 853]

1.    The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts One through Six above as though fully set forth in their entirety here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853.

2.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853, defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, or LEE, if convicted of any of the offenses charged in Counts One through Six of this Indictment, shall forfeit to the United States the following property:

> a.    All rights, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including without limitation:
>
> > 1.    Bluffview Securities, LP account ending in account number xx558;
>
> b.    A sum of money equal to the total amount of proceeds derived from each such offense for which defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, or LEE is convicted, or for which defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, or LEE may be held jointly and severally liable.

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendants ENRIQUE AGUILAR, LINDSEY MANUFACTURING, LINDSEY, or LEE, if so convicted, shall forfeit substitute property, up to the total value of the property described in paragraph 2 above, if, by any act or omission of the defendant, the property described in paragraph 2, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

NOTICE OF FORFEITURE II

[18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853]

1.   The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts Seven and Eight above as though fully set forth in their entirety here for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853.

2.   Pursuant to Title 18, United States Code, Section 982(a)(1), each of defendants ENRIQUE AGUILAR and ANGELA AGUILAR convicted under Count Seven and/or Count Eight of this Indictment shall forfeit to the United States the following property:

a.   All rights, title, and interest in any and all property involved in each offense committed in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:

(1) all money or other property that was the subject of each transaction in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and/or 1956(h);

(2) all commissions, fees, and other property constituting proceeds obtained as a result of those violations;

(3) all property used in any manner or part to commit or to facilitate the commission of those violations; and

(4) all property traceable to money or property described in this paragraph 2.a.(1) to 2.a.(3).

-27-

1          b.   A sum of money equal to the total amount of money

2  involved in each offense committed in violation of Title 18,

3  United States Code, Section 1956, or conspiracy to commit such

4  offense, for which the defendant is convicted.

5      3.   If, as a result of any act or omission by defendants

6  ENRIQUE AGUILAR and ANGELA AGUILAR, any of the foregoing money or

7  property (a) cannot be located upon the exercise of due

8  diligence; (b) has been transferred or sold to, or deposited

9  with, a third party; (c) has been placed beyond the jurisdiction

10 of the court; (d) has been substantially diminished in value; or

11 (e) has been commingled with other property that cannot be

12 subdivided without difficulty, then any other property or

13 interests of that defendant, up to the value of the money and

14 //

15 //

16

17

18

19

20

21

22

23

24

25

26

27

28

property described in the preceding paragraph of this Indictment,

shall be subject to forfeiture to the United States.

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS M. MILLER
Assistant United States Attorney
Public Corruption & Civil Rights Section


DENIS J. McINERNEY, Chief
Fraud Section, Criminal Division
U.S. Department of Justice

NICOLA J. MRAZEK, Senior Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice