GREENBERG TRAURIG, LLP
JAN L. HANDZLIK (SBN 47959)
GRACIA TSE (SBN 274293)
2450 Colorado Avenue, Suite 400E
Santa Monica, California 90404
Tel:   (310) 586-7700
Fax:   (310) 586-7800
Emails:  Handzlikj@gtlaw.com; Tseg@gtlaw.com

Attorneys for Defendants
LINDSEY MANUFACTURING COMPANY
and KEITH E. LINDSEY

CROWELL & MORING LLP
JANET I. LEVINE (SBN 94255)
MARTINIQUE E. BUSINO (SBN 270795)
515 South Flower Street, 40th Floor
Los Angeles, California  90071-2258
Tel:   (213) 622-4750
Fax:   (213) 622-2690
Emails:  jlevine@crowell.com; mbusino@crowell.com

Attorneys for Defendant
STEVE K. LEE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>vs.<br><br>ENRIQUE FAUSTINO AGUILAR NORIEGA, ANGELA MARIA GOMEZ AGUILAR, LINDSEY MANUFACTURING COMPANY, KEITH E. LINDSEY and STEVE K. LEE,<br><br>Defendants. | CASE NO. CR 10-1031 (A)-AHM<br><br>**DEFENDANTS LINDSEY MANUFACTURING COMPANY, KEITH E. LINDSEY AND STEVE K. LEE'S EX PARTE APPLICATION TO COMPEL PRODUCTION OF THE GRAND JURY TRANSCRIPT OF FBI SPECIAL AGENT SUSAN GUERNSEY; DECLARATION OF JAN L. HANDZLIK; EXHIBITS** |

**EX PARTE APPLICATION TO COMPEL PRODUCTION**

TO: UNITED STATES ATTORNEY ANDRÉ BIROTTE JR., ASSISTANT UNITED STATES ATTORNEY DOUGLAS M. MILLER, AND UNITED STATES DEPARTMENT OF JUSTICE SENIOR TRIAL ATTORNEYS NICOLA J. MRAZEK AND JEFFREY GOLDBERG:

PLEASE TAKE NOTICE that defendants Keith E. Lindsey, Lindsey Manufacturing Company and Steve Lee, by and through their counsel of record, hereby apply for an order compelling the government to produce the complete grand jury testimony of FBI Special Agent Susan Guernsey, the case agent in this case.

This Application is based on the accompanying Memorandum of Points and Authorities, attached declaration and exhibits, all the files and records in this case, and any the arguments and evidence presented at or before any hearing on this Application.   The government has been advised of this Application, opposes defendants proceeding by way of ex parte application and opposes the relief sought herein.

DATED:  April 13, 2011         Respectfully submitted,
                               JAN L. HANDZLIK
                               GREENBERG TRAURIG LLP


                                /s/ Jan L. Handzlik
                               By:  JAN L. HANDZLIK
                               Attorney for Defendants
                               Lindsey Manufacturing Company &
                               Keith E. Lindsey

DATED:  April 13, 2011         Respectfully submitted,
                               JANET I. LEVINE
                               CROWELL & MORING LLP


                                /s/ Janet I. Levine
                               By:  JANET I. LEVINE
                               Attorney for Defendant
                                  Steve K. Lee

## I.   **INTRODUCTION**

On the evening of March 24, 2011, the government produced a handful of heavily redacted snippets from the grand jury testimony of FBI case agent Susan Guernsey ("Agent Guernsey").  *See* Exhibit A.   This production was made in connection with Dr. Lindsey's *Miranda* motion.   This minimal disclosure of testimony revealed that Agent Guernsey made statements to the grand jury that were knowingly false and misleading and material to the issuance of the first superseding indictment ("FSI").   This revelation raises serious concerns that the indictment may have been secured through misconduct.

The Court already has a copy of Agent Guernsey's testimony.   It was filed *in camera* by the government on January 27, 2011.   The government should be compelled to turn over the complete transcript of Agent Guernsey's testimony to the defense, to enable it to evaluate the full extent of her misrepresentations and deception in pursuit of the FSI.

## II.   **BACKGROUND**

At a meet and confer conference between the parties on January 3, 2011, the government disclosed that Agent Guernsey had testified as a summary witness at the grand jury on October 21, 2011.   In her testimony, Agent Guernsey was called upon to summarize the evidence supporting the FSI and to answer questions posed by the jurors.   At the meet and confer, the defense asked the government to produce Agent Guernsey's grand jury testimony.   The government declined to do so, stating that it did not intend to call her as a witness at trial and thus need not produce her testimony. *See* Declaration of Jan L. Handzlik ("Handzlik Dec.") at ¶¶ 2-3.

On March 21, 2011, the Court ordered that Agent Guernsey be present for the March 25, 2011 hearing on Dr. Lindsey's motion to suppress the statement taken from him at the time of the search.   Agent Guernsey had participated in Dr. Lindsey's interrogation. Defense counsel reiterated the request to produce Agent

Guernsey's grand jury testimony on numerous occasions, including by telephone on March 22, 2011 and by e-mail on March 24, 2011. *See* Exhibit B. Defense counsel repeatedly asserted that Agent Guernsey's grand jury testimony was discoverable under the Jencks Act. *See* FRCP Rule 12(h) ("Rule 26.2 [Jencks Act] applies at a suppression hearing. . . .") The government did not respond to these requests. *See* Handzlik Dec. at ¶ 4.

On the evening of March 24, 2011, the day before the suppression hearing, the government produced a handful of heavily redacted pages – portions of nine pages out of a transcript that is at least 67 pages in length – from Agent Guernsey's grand jury testimony. [1] *See* Exhibit A. Defense counsel immediately requested that the full transcript be produced. *See* Exhibit C. Again, the government did not respond to this request. *See* Handzlik Dec. at ¶¶ 5-6.

Nonetheless, even the miniscule portion of Agent Guernsey's testimony produced by the government reveals that she made false and misleading representations to the grand jury on issues central to the issuance of the FSI. By way of example, in response to a question by a juror inquiring whether LMC had a history of "winning contracts from CFE" that predated the involvement of Grupo and Enrique Faustino Aguilar Noriega ("Mr. Aguilar"), Agent Guernsey falsely testified that LMC "didn't have a lot of business with CFE before they hired Aguilar." *See* Exhibit A (partial transcript at 67:1-9).

As Agent Guernsey and the prosecutors well knew, this statement was false and misleading. In fact, LMC had secured numerous contracts from CFE prior to engaging Mr. Aguilar's company as its Mexican sales representative on May 1, 2002. As reflected in the records seized by the FBI in November 2008, LMC had secured nearly $9,000,000 in contracts with CFE, dating back to 1991, before engaging Mr. Aguilar's company. In fact, LMC was the primary source of CFE's

---

[1] The snippets do not reveal the transcript's full length.

1 emergency restoration systems even before Mr. Aguilar's retention.

2 Moreover, Agent Guernsey knew her response to the juror's question was
3 deceptive and false. At the time she made this representation, Agent Guernsey, as
4 a case agent, had been in possession of all of LMC's business records for over two
5 years. These records, which were seized by the FBI on November 20, 2008,
6 contain contracts between Lindsey and CFE dating back to 1991 and the amounts
7 of each of those contracts.

8 In addition, a grand jury subpoena calling for records of LMC's dealings
9 with CFE from 1989 to 2009 was served on LMC in January 2010. The cover
10 letter from Mr. Miller accompanying the subpoena stated that all responsive
11 records could be delivered *directly to Agent Guernsey*, in lieu of a grand jury
12 appearance. *See* Exhibit D. Thereafter, these records were hand-delivered to
13 Agent Guernsey at her offices in West Covina on or about February 26, 2010. *See*
14 Exhibit E (production package label and a sample document reflecting 1991
15 contract between LMC and CFE). Agent Guernsey was undoubtedly familiar with
16 these records.

17 As a further example of Agent Guernsey's misleading testimony, the
18 transcript snippets also revealed that the government presented grand jury
19 testimony from Agent Guernsey about whether she found Steve Lee to be credible
20 during his interrogation by the FBI on November 20, 2008. In that interview Steve
21 Lee denied knowledge of any improper conduct, including bribe payments to CFE.
22 However, Agent Guernsey was *not* one of the agents present at Mr. Lee's
23 interrogation. Exhibit F (FBI 302 report for Steve Lee's interview). Nonetheless,
24 Agent Guernsey responded to Mr. Miller's question by denigrating Steve Lee's
25 credibility.[2] *See* Exhibit B (partial transcript at 23:6-21). And, even if Agent

26

---

27 [2]  Transcript excerpts at p. 23 (Bates Stamped Guernsey 000005):
28        Q.   Now, did you find that statement on Steve Lee's behalf to be credible that he did
not know that these payments were being made?

**EX PARTE APPLICATION TO COMPEL PRODUCTION**

1  Guernsey had been present, it would still have been improper for her to opine as to
2  Mr. Lee's apparent credibility.

3  **III.    THE FULL TRANSCRIPT SHOULD NOW BE PRODUCED**

4          These minimal snippets of Agent Guernsey's testimony before the grand
5  jury raise serious concerns about the manner in which the FSI was obtained.  The
6  full transcript of Agent Guernsey's testimony must be produced.  Only then will
7  defense counsel be able to adequately evaluate and resolve this issue.

8          Dismissal of an indictment is warranted, where misconduct by the
9  government "substantially influenced the grand jury's decision to indict, or if there
10  is 'grave doubt' that the decision to indict was free from the substantial influence
11  of such violations."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256
12  (1988).   "The court may dismiss an indictment as an exercise of its inherent
13  supervisory powers or to protect a defendant's due process rights."  *United States v.*
14  *Gonzalez,* 800 F.2d 895, 899 (9th Cir. 1986).

15          The Ninth Circuit has found this threshold to be satisfied when a witness
16  before the grand jury commits "knowing perjury relating to a material matter."
17  *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977);  *see also United*
18  *States v. Basurto*, 497 F.2d 781, 785-86 (9th Cir. 1974) (prosecutor's knowing use
19  of perjured testimony to the grand jury violated the Fifth Amendment's guarantee
20  of due process).

21          Even the limited snippets of grand jury testimony disclosed to date reveal
22  that Agent Guernsey made knowingly false and deceptive representations to the

23  _____

24          A.      We found it strange just on everything during our investigation that we found out.
    That he had been put on notice with the emails from Lamarche that it looked like it was
25  happening.  There were accusations from another large company General Electric.  You know,
    just all the information they had about his relationship with Nestor Moreno and, you know, Keith
26  Lindsey said that he suspected that it was going to someone at CFE, but he didn't want to know,
    and they're the president and vice president of the company, and they met Aguilar personally.
27  So, you know, it just seemed strange that he would say he had no idea because he had several
    indications in the past anyway that that was the way Enrique did business.
28

_____

**EX PARTE APPLICATION TO COMPEL PRODUCTION**

grand jury.   Among other things, these involved LMC's history of business dealings with CFE.  She informed the jurors that LMC had no significant dealings with CFE predating LMC's retention of Mr. Aguilar, despite knowing that this was not the case.  In addition to the seized materials and other evidence to the contrary, Agent Guernsey knew this was false and deceptive, based on documents that had been produced directly to her.   In truth, as Agent Guernsey well knew, approximately 1/3 of LMC's sales to CFE took place prior to the retention of Grupo.

These false and misleading representations were material to the FCPA charges in the indictment.  The purported absence of any significant prior business with CFE provided a potential motive for LMC to have Mr. Aguilar begin bribing CFE officials.  This is exactly what the government argued in its opening statement at trial.  It undoubtedly made the same sort of argument to the grand jury, based on Agent Guernsey's testimony.

By contrast, the fact that LMC already had a strong business relationship with CFE predating the retention of Mr. Aguilar undermines any apparent need by LMC to suddenly begin offering bribes.  In addition, if LMC had immediately begun to secure inordinate sales to CFE after retaining Mr. Aguilar, it might further suggest a motive to bribe.  But as Agent Guernsey well knew, this also did not happen, since LMC sales to CFE continued in a sporadic fashion for several years, even after Mr. Aguilar had been retained

Furthermore, the issue of LMC's history of past dealings with CFE was also clearly important to the grand jurors in determining whether to issue the FSI. One juror specifically inquired about the history of contracts predating Mr. Aguilar.

Thus, because the government provided knowingly false, deceptive and misleading evidence to the grand jurors, evidence that was material to the indictment and proffered in response to a pointed question by a juror, it undoubtedly influenced the grand jury's decision to indict.  At the very least, it

1  raises a 'grave doubt' that the decision to indict was free from the substantial
2  influence of such misconduct.

3      The defense has repeatedly requested Agent Guernsey's complete grand jury
4  testimony since the first of the year.  The government has repeatedly denied or
5  ignored these requests.[3]  Given that the snippets of testimony produced to date
6  reflect false and misleading statements, serious doubt has been cast on the
7  legitimacy of the FSI.  The defense should be permitted to examine the complete
8  testimony to determine the full extent to which Agent Guernsey's testimony tainted
9  the grand jury proceedings.

10  **IV.  CONCLUSION**

11      Therefore, defendants Lindsey Manufacturing Company, Keith Lindsey and
12  Steve Lee respectfully request an order requiring the government to produce the
13  complete transcript of grand jury testimony by the summary witness, Agent
14  Guernsey.   In the alternative, the defense asks the Court to review the transcript,
15  already in its possession, *in camera* to evaluate the extent to which it contains
16  additional misrepresentations and false and deceptive conduct.

18  DATED: April 13, 2011          Respectfully submitted,
19                                 JAN L. HANDZLIK
                                   GREENBERG TRAURIG. LLP
20                                 By:    /s/ Jan L. Handzlik
21                                 Attorneys for Defendants LINDSEY
                                   MANUFACTURING CO. and KEITH E. LINDSEY
22
23                                 JANET I. LEVINE
                                   CROWELL & MORING, LLP
24                                 By: /s/ Janet I. Levine
25                                 JANET I. LEVINE
                                   Attorneys for Defendant STEVE K. LEE

26 ────────────
27  [3]  On January 27, 2011, the government provided Agent Guernsey's complete grand jury transcript to the Court, *in camera*.  As an alternative to disclosure to the defense, defendants
28  respectfully request that the Court review the complete transcript in order to make its disclosure decision.

## DECLARATION OF JAN L. HANDZLIK

I, Jan L. Handzlik, declare:

1. I am a lawyer duly admitted to practice law before this Court and in the courts of the State of California. I am counsel of record for Defendants Keith E. Lindsey and Lindsey Manufacturing Company ("LMC") (collectively "Lindsey Defendants") in this case. Unless otherwise stated, I have personal and first-hand knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently to those facts.

2. Counsel of record for the respective parties participated in a meet and confer conference at the prosecutors' offices on January 3, 2011. During that meeting, the government disclosed that Agent Guernsey had testified at the grand jury on October 21, 2010 to summarize the evidence supporting the FSI and to answer questions posed by the jurors.

3. Upon learning of Agent Guernsey's role as a summary witness, counsel for the Lindsey Defendants and Mr. Lee requested that the government produce Agent Guernsey's grand jury testimony. The government declined to do so, stating that it did not intend to call her as a witness at trial, and thus need not produce her testimony.

4. Following the Court's March 21, 2011 order requiring that Agent Guernsey be present for the hearing on Dr. Lindsey's motion to suppress his statement, I reiterated the request for Agent Guernsey's grand jury testimony on numerous occasions, including by telephone to Mr. Miller on March 22, 2011 and by e-mail to the prosecution team on March 24, 2011. A copy of my March 24, 2011 e-mail to the prosecution team is attached as Exhibit B. The government did not respond to these requests.

5. On the evening of March 24, 2011, the day before the suppression hearing, the government produced a handful of heavily redacted pages – portions of nine

---

pages out of a transcript that is at least 67 pages from Agent Guernsey's grand jury testimony.  A copy of that testimony is attached as Exhibit A.

6.  Upon receiving the snippets of testimony, I immediately requested that the full transcript be produced.  A copy of my March 25, 2011 e-mail to Mr. Miller is attached as Exhibit C.  Again, I received no response to this request.

7.  Attached as Exhibit D is the January 12, 2010 subpoena, accompanied by Mr. Miller's cover letter, that the government issued on LMC.  I accepted service of the subpoena on LMC's behalf.

8.  Attached as Exhibit E is a copy of the package label and a sample document from the production that was hand-delivered to Agent Guernsey on February 26, 2010.

9.  Attached as Exhibit F is the FBI 302 report of Steve Lee's interview on November 20, 2008.

10.  On the evening of April 12, 2011, I left a voicemail message for Assistant U.S. Attorney Douglas Miller concerning this Application.  I informed him that, had I not heard back from him before 8:00 a.m. on April 13th, I would inform the Court that the government opposed the Application and relief it seeks.

I declare under the penalties of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 13th day of April 2011, at Los Angeles, California.


/s/ Jan L. Handzlik
JAN L. HANDZLIK

# EXHIBIT A



**U.S. Department of Justice**

Criminal Division
*United States Attorney*
*Central District of California*

---

*Douglas M. Miller*
*Assistant United States Attorney*
*(213) 894-2216*

*1300 United States Courthouse*
*312 North Spring Street*
*Los Angeles, CA 90012*

March 24, 2011

<u>Via Email</u>

Jan L. Handzlik
Greenberg Traurig LLP
2450 Colorado Ave.
Santa Monica, CA 90404

Stephen G. Larson
Girardi Keese
1126 Wilshire Blvd.
Los Angeles, CA 90017

Janet I. Levine
Crowell & Moring LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071

        Re:   <u>United States v. Enrique Faustino Aguilar Noriega, et al.</u>
                CR 10-1031 (A)-AHM

Dear Counsel:

      The government hereby provides redacted versions of FBI Special Agent Susan Guernsey's grand jury testimony relating to the statement of defendant Keith E. Lindsey. <u>See</u> Bates GUERNSEY 000001-000009.

Very truly yours,

ANDRÉ BIROTTE JR.
United States Attorney

<u>/s/ Douglas M. Miller</u>
DOUGLAS M. MILLER
Assistant United States Attorney

NICOLA J. MRAZEK
JEFFREY A. GOLDBERG
Senior Trial Attorneys
Fraud Section
United States Department of Justice

EXHIBIT A, Page 11

SUSAN GUERNSEY October 21, 2010

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24     Q     Did he make any representations about whether or
25   not he would deliver if you will?

18

Huntington Court Reporters & Transcription, Inc.
(626) 792-6777 (626) 792-8760

GUERNSEY 000001

EXHIBIT A, Page 12

SUSAN GUERNSEY October 21, 2010

```
 1     A    At the second meeting.  The second meeting that
 2   we're aware happened at Lindsey Manufacturing in Azusa.  He
 3   came in and met with Keith Lee -- I'm sorry -- Steve Lee
 4   and Keith Lindsey, and he said -- this was in our interview
 5   with Keith Lindsey.  He quoted Enrique as saying, "If you
 6   give me 30-percent commission, I'll get CFE."
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22     Q    When this came through, this commission, this
23   one-third of the profits is going to go to Enrique Aguilar,
24   did anybody acknowledge that this was a fairly high
25   commission?
```

19

Huntington Court Reporters & Transcription, Inc.
(626) 792-6777(626) 792-8760

GUERNSEY 000002

EXHIBIT A, Page 13

SUSAN GUERNSEY October 21, 2010

1       A    Yes.   Sergio Cortez acknowledges it in his Grand

2   Jury testimony, and in our interviews with Steve Lee and

3   Keith Lindsey they both said, "Yeah, it was a high

4   commission.   We didn't have anybody else with that high of

5   a commission."

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              20

Huntington Court Reporters & Transcription, Inc.
        (626) 792-6777(626) 792-8760

GUERNSEY 000003

EXHIBIT A, Page 14

SUSAN GUERNSEY October 21, 2010

1

2

3

4       Q    Now, did there come a time that Keith Lindsey

5  talked about what he believed this high commission was

6  being used for?

7       A    When we interviewed him, he said that he didn't

8  want to ask what it was used for.  He thought it was high.

9  Didn't want to know.  Just didn't want to know.

10      Q    Did he say that he assumed it was being used for

11  something?

12      A    He said he assumed that it was being used to

13  possibly pay someone at CFE but that he didn't want to

14  know.

15

16

17

18

19

20

21

22

23

24

25

22

Huntington Court Reporters & Transcription, Inc.
(626) 792-6777(626) 792-8760

GUERNSEY 000004

EXHIBIT A, Page 15

SUSAN GUERNSEY October 21, 2010

```
1
2
3
4
5
6      Q    Now, did you find that statement on Steve Lee's
7   behalf to be credible that he did not know that these
8   payments were being made?
9      A    We found it strange just on everything during our
10  investigation that we found out.  That he had been put on
11  notice with the emails from Lamarche that it looked like it
12  was happening.  There were accusations from another large
13  company General Electric.  You know, just all the
14  information they had about his relationship with Nestor
15  Moreno and, you know, Keith Lindsey said that he suspected
16  that it was going to someone at CFE, but he didn't want to
17  know, and they're the president and vice president of the
18  company, and they met with Aguilar personally.  So, you
19  know, it just seemed strange that he would say he had no
20  idea because he had several indications in the past anyway
21  that that was the way Enrique did business.
22
23
24
25
```

23

GUERNSEY 000005

EXHIBIT A, Page 16

SUSAN GUERNSEY October 21, 2010

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12     Q    The last point you brought up was this idea that
13  Keith Lindsey, the owner, had also admitted to assuming
14  that these were going back to pay people at CFE but
15  deliberately avoided that fact; is that right?
16     A    Yes.
17
18
19
20
21
22
23
24
25
```

                                                                    25

GUERNSEY 000006

EXHIBIT A, Page 17

SUSAN GUERNSEY October 21, 2010

```
1
2
3
4
5      Q    And Lindsey had already said to the FBI or has
6  said to the FBI that he assumed these were going back, some
7  of this was going back to people at CFE, but he
8  intentionally didn't ask about it?
9      A    Yes.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

33

Huntington Court Reporters & Transcription, Inc.
(626) 792-6777 (626) 792-8760

GUERNSEY 000007

EXHIBIT A, Page 18

SUSAN GUERNSEY October 21, 2010

```
1
2        A JUROR:  From the invoices it's implied that the 30
3   percent wasn't being paid to Aguilar unless they got
4   invoiced.  They didn't automatically pay the 30 percent at
5   the time they got paid by CFE?
6        THE WITNESS:  Right.  In talking to Steve Lee and
7   Keith Lindsey, they would not pay Aguilar his 30-percent
8   commission until they were paid by CFE.  They were very
9   clear before that.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

63

Huntington Court Reporters & Transcription, Inc.
(626) 792-6777 (626) 792-8760

GUERNSEY 000008

EXHIBIT A, Page 19

SUSAN GUERNSEY October 21, 2010

1        A JUROR:  My understanding is that Lindsey has been in

2    business for sixty-some years.  Does Lindsey have a history

3    of winning contracts from CBE?

4        THE WITNESS:  From CFE?

5        A JUROR:  Yeah, from CFE.

6        THE WITNESS:  I believe according to Keith Lindsey's

7    testimony their first contract awarded by CFE was in '94.

8    They didn't have a lot of business with CFE before they

9    hired Aguilar.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

67

Huntington Court Reporters & Transcription, Inc.
(626) 792-6777(626) 792-8760

GUERNSEY 000009

EXHIBIT A,  Page 20

# EXHIBIT B

**From:** handzlikj@gtlaw.com [mailto:handzlikj@gtlaw.com]
**Sent:** Thursday, March 24, 2011 9:56 AM
**To:** douglas.m.miller@usdoj.gov; nicola.mrazek@usdoj.gov; jeffrey.goldberg2@usdoj.gov
**Cc:** jlevine@crowell.com; slarson@girardikeese.com; mweber@girardikeese.com; mbusino@crowell.com; jroberson@crowell.com; mhayes@helpcounsel.com; tseg@gtlaw.com
**Subject:** Activity in Case 2:10-cr-01031-AHM USA v. Noriega et al Order on Motion to Suppress
**Importance:** High

Nicola and Gentlemen:

This again renews my request for all Jencks material and Rule 16 material relating to Special Agent Guernsey of the FBI and the other law enforcement agents ordered to appear at the hearings on the pending motions to suppress.

As Doug knows, I most recently made this request in a phone conversation with him earlier this week. Since this form of contact with the prosecution team, which Doug and Jeff have encouraged, has not resulted in any action on your part, I write this message to memorialize this. Be advised that this message does not supersede my earlier requests or eradicate the fact that I have already made this request. (Indeed, the defense has been seeking Jencks re SA Guernsey for months.)

As you know, the rules are crystal clear on our entitlement to this information and these materials in connection with motions to suppress. Special Agent Guernsey and other law enforcement agents have been ordered to appear at the hearings on the pending motions to suppress evidence seized on November 20, 2008, the August 2010 CDT/ESI warrant and the statements of Keith Lindsey and Steve Lee.

The Court's ruling at 8:48 this morning, below, recounts its ruling on the 11/20/08 suppression motion, namely, that issues other than probable cause will be determined at tomorrow afternoon's hearing. SA Guernsey, among other agents, is essential to the defense in connection with the 11/20/08 search and statement taken from Dr. Lindsey and Mr. Lee.

In order to effectively prepare for tomorrow's 1:30 pm hearing, we must have these materials no later than 1:30 pm Pacific today. While I am reluctant to raise yet another issue with the Court today, please be assured that I will do so, should we not receive these materials by 1:30 pm today or at such other reasonable time that we agree upon.

Thanks, Jan


J.L. Handzlik
Greenberg Traurig LLP
+1.310.586.6542 Direct
+1.310.586.0542 Direct Fax
+1.213.300.0230 Mobile
handzlikj@gtlaw.com

# EXHIBIT C

**From:** handzlikj@gtlaw.com [mailto:handzlikj@gtlaw.com]
**Sent:** Friday, March 25, 2011 8:00 AM
**To:** douglas.m.miller@usdoj.gov; slarson@girardikeese.com; jlevine@crowell.com
**Cc:** jeffrey.goldberg2@usdoj.gov; nicola.mrazek@usdoj.gov; mhayes@helpcounsel.com;
tseg@gtlaw.com; mweber@girardikeese.com; mbuslno@crowell.com
**Subject:** Re: 3-24-2011 Guernsey; Discovery; Grand Jury Issues

Doug:

This is to request that, on the government's behalf, you forthwith furnish to me:

A. the complete grand jury testimony of SA Binder;

B. the statements of the prosecutors to the grand jury, including but not limited to the prosecutors'
statements (including those made in response to statements/questions made/asked by members of the
grand jury), summarizing and/or referring to the facts and/or evidence underlying the first superseding
indictment presented to the grand jury; and

C. any other information indicating that, prior to the return of the first superseding indictment:

1. the grand jury was presented with and/or given false/misleading information/statements; and/or

2. material information was not disclosed to the grand jury.

This demand is based on, among other things, the following:

A. Issues and matters raised by and in connection with:

1. the Franks motion and the Franks hearing, including but not limited to the fact that as late as
approximately October 5, 2010, agents Binder and Mendoza were still including inaccurate LMC-Sorvill
information in sworn affidavits;

2. the motions to suppress, including but not limited to such motions re the defendants' statements and re
overbreadth and ESI;

3. SA Guernsey's affidavit in support of a seizure warrant for property relating to the Aguilars, which
among other things included inaccurate LMC-Sorvill information;

4. the summary slide/visual/chart purporting to show relationships between and among CFE, LMC, Grupo
and Sorvill that was furnished to us by the government earlier this week; and

5. the snippet of SA Guernsey's testimony before the grand jury furnished to us so far and which appears
to relate to only to one of the motions to suppress (KEL's statement), and which contains inaccurate
and/or misleading testimony known to be inaccurate and/or misleading at the time it was given;

B. my prior requests for the Jencks and Rule 16 materials relating to the agents ordered by the Court to
be present at the hearings on the motions to suppress, including but not limited to the complete testimony
of SA Guernsey; and

C. the fact that the first superseding indictment was returned on or about October 21, 2010, after the
grand jurors had heard testimony from SA Guernsey containing at least one inaccurate and/or misleading
statement.

The information and things requested by this message are essential to the defense preparation for the
hearings scheduled for this afternoon and Monday afternoon, and may provide bases upon which to

move for dismissal of the first superseding indictment on issues relating to grand jury matters.

We expect these requests to be fulfilled by 11:00 am this morning. This message does not supersede or nullify my prior requests for Jencks and Rule 16 materials relating to the agents ordered by the Court to be present at the suppression hearings.

Thanks, Jan


J.L. Handzlik
Greenberg Traurig LLP
+1.310.586.6542 Direct
+1.310.586.0542 Direct Fax
+1.213.300.0230 Mobile
handzlikj@gtlaw.com


Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.
The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

**From:** Levine, Janet <JLevine@crowell.com>
**To:** Miller, Douglas M. (USACAC) <douglas.m.miller@usdoj.gov>; slarson@girardikeese.com <slarson@girardikeese.com>; Handzlik, Jan L. (Shld-LA-LT)
**Cc:** Goldberg, Jeffrey (CRM) <Jeffrey.Goldberg2@usdoj.gov>; Mrazek, Nicola (CRM) <Nicola.Mrazek@usdoj.gov>
**Sent:** Fri Mar 25 06:14:15 2011
**Subject:** RE: 3-24-2011 Guernsey

Doug-
What about testimony related to documents searches.

**From:** Miller, Douglas M. (USACAC) [mailto:douglas.m.miller@usdoj.gov]
**Sent:** Thursday, March 24, 2011 5:05 PM
**To:** slarson@girardikeese.com; handzlikj@gtlaw.com; Levine, Janet
**Cc:** Goldberg, Jeffrey (CRM); Mrazek, Nicola (CRM)
**Subject:** 3-24-2011 Guernsey


<<03-24-11.Guernsey.pdf>> <<Guernsey bates docs.pdf>>

*Douglas M. Miller | Assistant United States Attorney*

*Public Corruption & Civil Rights Section*
1300 United States Courthouse | 312 N. Spring St. | Los Angeles, California 90012
T: 213.894.2216| F: 213.894.6436 | Email: douglas.m.miller@usdoj.gov

EXHIBIT C, Page 24

# EXHIBIT D



U. S. Department of Justice

*United States Attorney*
*Central District of California*

Douglas M. Miller                              United States Courthouse
Assistant United States Attorney               312 North Spring Street
(213) 894-2216                                 Los Angeles, California

January 12, 2010

Lindsey Manufacturing and
Lindsey International Incorporated
Attn: Custodian of Records

     Re:  <u>Federal Grand Jury Subpoena</u>

Dear Sir or Madam:

    The enclosed subpoena has been issued in connection with an official criminal investigation being conducted by the Federal Bureau of Investigation. The subpoena requires that a custodian of records from your business appear before the grand jury and produce the records described in the subpoena on the date and at the time specified on the subpoena.

    As a convenience to you, you can produce the demanded documents by mail or in person to SA Susan Guernsey of the Federal Bureau of Investigation who will deliver the requested documents to the grand jury.  If you would like to do so in order to avoid a personal appearance, you must (a) deliver or mail the documents so that they are received in advance of the date specified on the subpoena; and (b) have an appropriate custodian of records from your business fill in the declaration enclosed with this letter.  Unless you comply with both of those requirements, a custodian of records must appear in person to produce the documents.

    If you choose to mail the records, please send them to the following address:

        Federal Bureau of Investigation
        Attn: SA Susan Guernsey
        1050 Lakes Drive, Suite 350
        West Covina, CA 91790

EXHIBIT D, Page 25

Please do not deliver or mail any of the subpoenaed documents to the United States Attorney's Office.

Because this subpoena relates to an ongoing criminal investigation, this Office requests that you not disclose the existence of or compliance with the subpoena for an indefinite period of time or until the Office notifies you that the investigation has been completed or until a court orders disclosure. Premature disclosure could impede the investigation and interfere with the enforcement of the law. In addition, you do not have an obligation under Right to Financial Privacy Act, 12 U.S.C. § 3401, et seq. to disclose to a customer your receipt of or compliance with a federal grand jury subpoena for that customer's records. We request that you give this Office advance notice if you plan to disclose the existence of or compliance with the subpoena.

If you have any questions regarding compliance with this subpoena, please call me at (213) 894-2216 or SA Susan Guernsey at (626) 931-1254.

Very truly yours,

GEORGE S. CARDONA
Acting United States Attorney

DOUGLAS M. MILLER
Assistant United States Attorney

Enclosures

EXHIBIT D, Page 26

AO 110 (Rev. 04/07) Subpoena to Testify Before Grand Jury 

# United States District Court
## Central District of California

TO:
**Lindsey Manufacturing and Lindsey International Incorporated**
**Attn: Custodian of Records**

## SUBPOENA TO TESTIFY BEFORE GRAND JURY

SUBPOENA FOR:

☐ Person    ☒ Document(s) or Object(s)

☐ YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| UNITED STATES COURTHOUSE<br>312 NORTH SPRING STREET<br>LOS ANGELES, CALIFORNIA 90012 | Room 1346<br>13th Floor |
| | DATE AND TIME<br>February 19, 2010 at 9:30 a.m. |

☒ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

### SEE ATTACHMENT

☐ *Please see additional information on reverse*
This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| *Terry Nafisi* | January 12, 2010 |
| (By) Deputy Clerk<br>Terry Nafisi, Clerk of the Court | |

This subpoena is issued on application of the United States of America

GEORGE S. CARDONA
Acting United States Attorney

"If not applicable, enter "none"

Douglas M. Miller
Assistant United States Attorney
United States Courthouse
312 North Spring Street, 11th Floor
Los Angeles, California 90012
Telephone: (213) 894-2216

Special Agent: Susan Guernsey
Telephone:   (626) 931-1254

Note: An Agent of FBI will deliver the above-mentioned document(s) to the Grand Jury should you desire to volunteer them to the Grand Jury in advance of the Grand Jury date indicated above.

<u>SUBPOENA ATTACHMENT FOR LINDSEY MANUFACTURING AND LINDSEY
INTERNATIONAL INCORPORATED</u>

A.   <u>DOCUMENTS TO BE PROVIDED</u>

    1.   From the date of January 1, 1989 to the present, all
documents relating to Comision Federal de Electricidad (CFE)
Sorvill International S.A., Global Financial, Asset Management
Plus, Maquinaria Unida SA De CV, Energia Electica Economica SA De
CV, Exim Forwarding Inc., Grupo Internacional De Asesores S.A.,
Enrique Faustino Aguilar Noriega (aka Enrique Aguilar), Angela
Gomez Cepeda Aguilar (aka Angela Aguilar), Nestor Moreno Diaz
(aka Nestor Moreno), Cesar Moreno, and/or any agent or employee
of any of the above.   These documents shall include, but not be
limited to, the following:

        a.   All commissions, bids, offers, counter-offers,
agreements, contracts, purchase orders, invoices, and/or
correspondence submitted and/or paid to or by any of the above-
listed persons or entities; and

        b.   All instructions, manuals, procedures, policies,
and/or guidelines relating to the preparation, submission and/or
rejection of commissions, bids, offers, counter-offers,
agreements, contracts, purchase orders, and invoices submitted to
or by any of the above-listed persons or entities.

    2.   From the date of January 1, 2004 to the present,

        a.   All retained copies of federal and state income
and payroll tax returns, state sales tax returns and amended tax
returns;

        b.   All documents used in or resulting from the
preparation of federal and state income tax returns, including,
but not limited to, all Forms 1099, billing invoices,
work-papers, notes, memoranda and correspondence; and

        c.   All documents relating to audits conducted by
the Internal Revenue Service.

B.   <u>DEFINITIONS AND INSTRUCTIONS</u>

    1.   "Document" means each and every writing, of whatever
nature, whether an original, a draft, or a copy, however
produced, reproduced or stored, whether manually, mechanically,
electronically, electromagnetically or otherwise, and each and
every tangible thing from which information can be processed or
transcribed.   Non-identical copies are deemed to be separate
documents.

a.   The term "document" includes, but is not limited to, e-mails, letters, telegrams, telexes, facsimiles, contracts, agreements, memoranda, receipts, calendars, diaries, appointment books, personal files, telephone messages and message logs, notes, schedules, work sheets, books, pamphlets, summaries, proposals, photographs, ledgers, statements, files, invoices, billing information, notebooks, verifications of assets, financial statements and other compilations of financial data, work papers, bank statements and associated bank records, checks, records of wire transfers or cash payments, charts, graphs, research materials, prospectuses, registration statements, and computer printouts and other computer generated writings, or any similar item.

b.   The term "document" includes all such material now in your possession, custody or control, including each and every document that is under your control but is not in your immediate possession.

2.   The subpoenaed party is to designate an officer or employee as the person responsible to produce documents to the grand jury on the subpoena return date (the "Custodian").  Such Custodian shall have direct, personal, and thorough knowledge of the Company's records and shall have knowledge of, and responsibility for the search conduct by the Company for documents responsive to this subpoena.  The Custodian will be examined concerning the completeness of the response on the return date.

3.   On the subpoena return date, the Custodian is to appear before the Grand Jury, produce the documents called for, and be examined concerning the Company's production.

4.   No document called for by this subpoena shall be destroyed, modified, removed or otherwise made inaccessible to the Grand Jury.

5.   If the Company has knowledge of any document that would be responsive to this subpoena attachment but has been lost, destroyed, or discarded in the last seven years, it shall identify to the extent possible each such document and provide an explanation of the loss, destruction, or discarding.

6.   Each and every document requested by this Subpoena shall be produced in the manner in which it is or has been maintained in the ordinary course of business.  If, by way of illustration, documents requested by this Subpoena are or have been maintained in a folder, the documents requested shall be produced in the original folder.

EXHIBIT D, Page 29

7.   No modifications will be made to the terms of this Subpoena except in writing.

8.   Privilege Log: All documents for which you claim any privilege shall be segregated, maintained and not destroyed, and specifically and individually identified on a privilege log to be produced at the time of production with the following descriptors: (a) control numbers for the page range; (b) date; (c) author; (d) addressees/recipients; (e) format; (f) name of litigation or transaction giving rise to privilege; (g) specific subject matter; and (h)  privilege claimed.

### DECLARATION OF CUSTODIAN CERTIFYING BUSINESS RECORD
(Please type or print legibly except for signature.)

I, _____, hereby declare as follows:
(name)

(1)  I am a custodian of records for _____,
(name of business or entity)

and in that capacity am knowledgeable about the matters set forth

herein.

(a)  My job title/position is:

(b)  I have been employed in this capacity for _____
(duration)

and by the aforementioned business/entity for _____.
(duration)

(c)  My job duties are:

(d)  I am knowledgeable about the matters set forth herein and the relevant record-keeping practices of the aforementioned business/entity based upon (check all that apply):

[ ] Training.

[ ] Familiarity with relevant policy/policies.

[ ] Hands-on experience.

[ ] Supervision of one or more others with hands-on experience.

[ ] Other.  Describe:

(2)  Attached hereto or enclosed herewith are *originals/*
*true and correct duplicates* of a record or records of a regularly

conducted activity of the business or entity named above.

(Circle either "originals" or "true and correct duplicates" and

EXHIBIT D,  Page 31

strike out the other term.)

(3)  I certify that the attached record(s):

       (a) was/were made at or near the time of the occurrence of the matters set forth therein,

       (b) was/were made by, or from information transmitted by, a person with knowledge of those matters;

       (c)  was/were kept in the course of the regularly conducted activity;

       (d)  was/were made by and in the course of the regularly conducted activity as a regular practice;

       (e)  if not original records, are exact duplicates of original records.

       I declare under penalty of perjury that the foregoing is

true and correct.  Dated _____ and
                                     (date document was signed)

executed at _____.
                (place document was signed)

_____
               (signature)

_____
            (typed or printed name)



U. S. Department of Justice

*United States Attorney*
*Central District of California*

Douglas M. Miller
*Assistant United States Attorney*
*(213) 894-2216*

United States Courthouse
312 North Spring Street
Los Angeles, California

January 12, 2010

Lindsey Manufacturing and
Lindsey International Incorporated
Attn: Custodian of Records

    Re:  <u>Federal Grand Jury Subpoena</u>

Dear Sir or Madam:

    The enclosed subpoena has been issued in connection with an official criminal investigation being conducted by the Federal Bureau of Investigation. The subpoena requires that a custodian of records from your business appear before the grand jury and produce the records described in the subpoena on the date and at the time specified on the subpoena.

    As a convenience to you, you can produce the demanded documents by mail or in person to SA Susan Guernsey of the Federal Bureau of Investigation who will deliver the requested documents to the grand jury. If you would like to do so in order to avoid a personal appearance, you must (a) deliver or mail the documents so that they are received in advance of the date specified on the subpoena; and (b) have an appropriate custodian of records from your business fill in the declaration enclosed with this letter. Unless you comply with both of those requirements, a custodian of records must appear in person to produce the documents.

    If you choose to mail the records, please send them to the following address:

       Federal Bureau of Investigation
       Attn: SA Susan Guernsey
       1050 Lakes Drive, Suite 350
       West Covina, CA 91790

Please do not deliver or mail any of the subpoenaed documents to the United States Attorney's Office.

Because this subpoena relates to an ongoing criminal investigation, this Office requests that you not disclose the existence of or compliance with the subpoena for an indefinite period of time or until the Office notifies you that the investigation has been completed or until a court orders disclosure. Premature disclosure could impede the investigation and interfere with the enforcement of the law. In addition, you do not have an obligation under Right to Financial Privacy Act, 12 U.S.C. § 3401, et seq. to disclose to a customer your receipt of or compliance with a federal grand jury subpoena for that customer's records. We request that you give this Office advance notice if you plan to disclose the existence of or compliance with the subpoena.

If you have any questions regarding compliance with this subpoena, please call me at (213) 894-2216 or SA Susan Guernsey at (626) 931-1254.

Very truly yours,

GEORGE S. CARDONA
Acting United States Attorney

DOUGLAS M. MILLER
Assistant United States Attorney

Enclosures

EXHIBIT D, Page 34

AO 110 (Rev. 04/07) Subpoena to Testify Before Grand Jury

# United States District Court
## Central District of California

TO:
**Lindsey Manufacturing and Lindsey International Incorporated**
**Attn: Custodian of Records**

**SUBPOENA TO TESTIFY**
**BEFORE GRAND JURY**

SUBPOENA FOR:

☐ Person     ☒ Document(s) or Object(s)

☐ YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| UNITED STATES COURTHOUSE<br>312 NORTH SPRING STREET<br>LOS ANGELES, CALIFORNIA 90012 | Room 1346<br>13th Floor |
| | DATE AND TIME<br>February 19, 2010 at 9:30 a.m. |

☒ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

SEE ATTACHMENT

☐ Please see additional information on reverse
This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| *Terry Nafisi*<br>(By) Deputy Clerk<br>Terry Nafisi, Clerk of the Court | January 12, 2010 |
| This subpoena is issued on application of the United States of America<br><br>GEORGE S. CARDONA<br>Acting United States Attorney | Douglas M. Miller<br>Assistant United States Attorney<br>United States Courthouse<br>312 North Spring Street, 11th Floor<br>Los Angeles, California 90012<br>Telephone: (213) 894-2216 |

*if not applicable, enter "none"

Special Agent: Susan Guernsey
Telephone:  (626) 931-1254

Note: An Agent of FBI will deliver the above-mentioned document(s) to the Grand Jury should you desire to volunteer them to the Grand Jury in advance of the Grand Jury date indicated above.

EXHIBIT D, Page 35

SUBPOENA ATTACHMENT FOR LINDSEY MANUFACTURING AND LINDSEY
INTERNATIONAL INCORPORATED

A.    DOCUMENTS TO BE PROVIDED

1.    From the date of January 1, 1989 to the present, all
documents relating to Comision Federal de Electricidad (CFE)
Sorvill International S.A., Global Financial, Asset Management
Plus, Maquinaria Unida SA De CV, Energia Electica Economica SA De
CV, Exim Forwarding Inc., Grupo Internacional De Asesores S.A.,
Enrique Faustino Aguilar Noriega (aka Enrique Aguilar), Angela
Gomez Cepeda Aguilar (aka Angela Aguilar), Nestor Moreno Diaz
(aka Nestor Moreno), Cesar Moreno, and/or any agent or employee
of any of the above.   These documents shall include, but not be
limited to, the following:

a.    All commissions, bids, offers, counter-offers,
agreements, contracts, purchase orders, invoices, and/or
correspondence submitted and/or paid to or by any of the above-
listed persons or entities; and

b.    All instructions, manuals, procedures, policies,
and/or guidelines relating to the preparation, submission and/or
rejection of commissions, bids, offers, counter-offers,
agreements, contracts, purchase orders, and invoices submitted to
or by any of the above-listed persons or entities.

2.    From the date of January 1, 2004 to the present,

a.    All retained copies of federal and state income
and payroll tax returns, state sales tax returns and amended tax
returns;

b.    All documents used in or resulting from the
preparation of federal and state income tax returns, including,
but not limited to, all Forms 1099, billing invoices,
work-papers, notes, memoranda and correspondence; and

c.    All documents relating to audits conducted by
the Internal Revenue Service.

B.    DEFINITIONS AND INSTRUCTIONS

1.    "Document" means each and every writing, of whatever
nature, whether an original, a draft, or a copy, however
produced, reproduced or stored, whether manually, mechanically,
electronically, electromagnetically or otherwise, and each and
every tangible thing from which information can be processed or
transcribed.   Non-identical copies are deemed to be separate
documents.

a.   The term "document" includes, but is not limited to, e-mails, letters, telegrams, telexes, facsimiles, contracts, agreements, memoranda, receipts, calendars, diaries, appointment books, personal files, telephone messages and message logs, notes, schedules, work sheets, books, pamphlets, summaries, proposals, photographs, ledgers, statements, files, invoices, billing information, notebooks, verifications of assets, financial statements and other compilations of financial data, work papers, bank statements and associated bank records, checks, records of wire transfers or cash payments, charts, graphs, research materials, prospectuses, registration statements, and computer printouts and other computer generated writings, or any similar item.

b.   The term "document" includes all such material now in your possession, custody or control, including each and every document that is under your control but is not in your immediate possession.

2.   The subpoenaed party is to designate an officer or employee as the person responsible to produce documents to the grand jury on the subpoena return date (the "Custodian").   Such Custodian shall have direct, personal, and thorough knowledge of the Company's records and shall have knowledge of, and responsibility for the search conduct by the Company for documents responsive to this subpoena.   The Custodian will be examined concerning the completeness of the response on the return date.

3.   On the subpoena return date, the Custodian is to appear before the Grand Jury, produce the documents called for, and be examined concerning the Company's production.

4.   No document called for by this subpoena shall be destroyed, modified, removed or otherwise made inaccessible to the Grand Jury.

5.   If the Company has knowledge of any document that would be responsive to this subpoena attachment but has been lost, destroyed, or discarded in the last seven years, it shall identify to the extent possible each such document and provide an explanation of the loss, destruction, or discarding.

6.   Each and every document requested by this Subpoena shall be produced in the manner in which it is or has been maintained in the ordinary course of business.   If, by way of illustration, documents requested by this Subpoena are or have been maintained in a folder, the documents requested shall be produced in the original folder.

7.   No modifications will be made to the terms of this Subpoena except in writing.

8.   Privilege Log: All documents for which you claim any privilege shall be segregated, maintained and not destroyed, and specifically and individually identified on a privilege log to be produced at the time of production with the following descriptors: (a) control numbers for the page range; (b) date; (c) author; (d) addressees/recipients; (e) format; (f) name of litigation or transaction giving rise to privilege; (g) specific subject matter; and (h)  privilege claimed.

## DECLARATION OF CUSTODIAN CERTIFYING BUSINESS RECORD
### (Please type or print legibly except for signature.)

I, _____, hereby declare as follows:
  (name)

(1) I am a custodian of records for _____,
                                         (name of business or entity)

and in that capacity am knowledgeable about the matters set forth

herein.

   (a) My job title/position is:

   (b) I have been employed in this capacity for _____
                                                       (duration)

and by the aforementioned business/entity for _____.
   (duration)

   (c) My job duties are:

   (d) I am knowledgeable about the matters set forth herein and the relevant record-keeping practices of the aforementioned business/entity based upon (check all that apply):

      [ ] Training.

      [ ] Familiarity with relevant policy/policies.

      [ ] Hands-on experience.

      [ ] Supervision of one or more others with hands-on experience.

      [ ] Other. Describe:

(2) Attached hereto or enclosed herewith are *originals/
true and correct duplicates* of a record or records of a regularly

conducted activity of the business or entity named above.

(Circle either "originals" or "true and correct duplicates" and

strike out the other term.)

(3) I certify that the attached record(s):

      (a) was/were made at or near the time of the occurrence of the matters set forth therein,

      (b) was/were made by, or from information transmitted by, a person with knowledge of those matters;

      (c) was/were kept in the course of the regularly conducted activity;

      (d) was/were made by and in the course of the regularly conducted activity as a regular practice;

      (e) if not original records, are exact duplicates of original records.

      I declare under penalty of perjury that the foregoing is true and correct. Dated _____ and

(date document was signed)

executed at _____ .

(place document was signed)

_____

(signature)

_____

(typed or printed name)

# EXHIBIT E



Lindsey_GJ_000001

EXHIBIT E, Page 41



# LINDSEY

**MANUFACTURING COMPANY**
**LINDSEY INTERNATIONAL INC.**
760 N. GEORGIA AVE. • P.O. BOX 877 AZUSA • CA 91702 U.S.A.
TELEPHONE (818) 969-3471   TELEX: 19-4721 LINDSEY AZSA
FAX (818) 969-3177

| | |
|---|---|
| Invoice Number | 90141 |
| Invoice Date | 05-20-92 |
| Shipper Number | 287100-00 |
| Order Date | 10-15-91 |

## INVOICE

## ORIGINAL

**Sold To**
COMISION FEDERAL DE ELECTRICIDAD
RIO RODANO NO. 14 COL. CUAUHTEMOC
C.P. 06895, MEXICO, D.F.

**Ship To**
COMISION FEDERAL DE ELECTRICIDAD
SUBGCIA REG. DE TRANSM. NOROESTE
ING. JAVIER LEON VILLANUEVA
SUBGTE. REG. DE TRANS. NOROESTE
BODEGA HERMOSILLO KM. 3.5
CARRETERA HERMOSILLO-SAHUARIPA
ENCARGADO SR. SERGIO CONTRERAS
TEL. 14-70-50, EXT. 1104

3002          10.00

| Ship Via | Ship Date |
|---|---|
| F.O.B. DESTINATION PREFAB TRANSIT CO. | 05-20-92 |

| Purchase Order No. | Customer No. | CL | Slsm | Price | Terms | Tax | Freight Code | Warehouse |
|---|---|---|---|---|---|---|---|---|
| 91-2-42496-AW3 | 5543 | 100 | 30 | T | LETTER OF CRED | O PP | ALLOWED | AZUSA WHSE |

| Line | Item No. | Description | Qty. Ord. | Qty. Ship. | Qty. B/O | Price | Ox% | Extended |
|---|---|---|---|---|---|---|---|---|
| | | UN SISTEMA MODULAR DE REES | | | | | | |
| | | TABLECIMIENTO DE EMERGENCIA | | | | | | |
| | | DE LINEAS DE TRANSMISION DE | | | | | | |
| | | LA MARCA LINDSEY QUE CONSTA | | | | | | |
| | | DE | | | | | | |
| 1 | 7151 | COLUMNA DE 21 PIES | 43 | 43 | 0 | 4351.20 | 0 | 187101.6 |
| 2 | 7152 | COLUMNA DE 14 PIES | 63 | 63 | 0 | 3357.30 | 0 | 211509.9 |
| 3 | 7153 | COLUMNA DE 7 PIES | 26 | 26 | 0 | 2420.50 | 0 | 62933.0 |
| 4 | 7154 | BASE | 21 | 21 | 0 | 4250.85 | 0 | 89267.8 |
| 5 | 7155 | SECCION DE CAJA | 48 | 48 | 0 | 2861.55 | 0 | 137354.4 |
| 6 | 7156 | 45/0 PLACA DE SOSTEN | 20 | 20 | 0 | 825.95 | 0 | 16519.0 |
| 7 | 7157 | 45/45 PLACA DE SOSTEN | 96 | 96 | 0 | 837.50 | 0 | 80400.0 |
| 8 | 7158 | 0/0 PLACA DE SOSTEN | 20 | 20 | 0 | 814.15 | 0 | 16283.0 |
| 9 | 7424 | ARTICULACION | 21 | 21 | 0 | 5449.25 | 0 | 114434.2 |
| 10 | 3262BNC | 60KIP GRILLETES | 557 | 557 | 0 | 19.25 | 0 | 10722.2 |
| 11 | 3405 | 60KIP ESLABON DE CADENA | 44 | 44 | 0 | 18.15 | 0 | 798.6 |
| 12 | 7610 | 60KIP YUGO DE PLACA | 12 | 12 | 0 | 233.40 | 0 | 2800.8 |
| 13 | 3790EE | HEBILLA DE VUELTA | 69 | 69 | 0 | 112.20 | 0 | 7741.8 |
| 14 | 7950 | GUARDACABO | 152 | 152 | 0 | 16.95 | 0 | 2576.4 |
| 15 | R-13193 | PLATINA DE ANCLAJE | 154 | 154 | 0 | 104.85 | 0 | 16146.9 |
| 16 | R-10850 | ADAPTADOR PARA AISLADOR DE POSTE | 63 | 63 | 0 | 47.55 | 0 | 2995.6 |
| 17 | 1710SY | GRAPA DE ANCLAJE CON ROTULA Y HORQUILLA | 12 | 12 | 0 | 102.65 | 0 | 1231.8 |
| 18 | 1701SY | GRAPA DE ANCLAJE PARA GUARDA CON ROTULA Y HORQUILLA | 8 | 8 | 0 | 61.05 | 0 | 488.4 |
| 19 | 1420/120Y | GRAPA DE SUSPENSION EHV CON ROTULA Y HORQUILLA | 63 | 63 | 0 | 159.05 | 0 | 10020.1 |
| 20 | 1329 | GRAPA DE SUSPENSION PARA GUARDA | 20 | 20 | 0 | 24.85 | 0 | 497.0 |
| 21 | R-13467 | SUJETADOR PREFORMADO | 418 | 418 | 0 | 39.95 | 0 | 16699.1 |

**** C O N T I N U E D ****

| | Sub Total | Tax | Freight | Total U.S. $ ********* |
|---|---|---|---|---|

**NOTICE:** Balances unpaid within above terms are subject to a late payment charge of 1½% per month (18% per annum) or maximum allowed by Law, if different, together with expenses incidental to collection, including reasonable attorney's fees.

**PLEASE PAY THIS AMOUNT**

*Please make check payable to: Lindsey Manufacturing Company*

CUSTOMER ORIGINAL INVOICE

**LINDSEY00938**

EXHIBIT E, Page 43

# EXHIBIT F

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription   11/30/2008

Steven Kacham Lee, ███████████████████████, Chief
Financial Officer for Lindsey Manufacturing Company (LCM), work
telephone number (626) 969-3471, extension 122, was interviewed at
his place employment. LMC is located at 760 North Georgia Avenue,
Azusa, California, 91702. Prior to beginning the interview, Lee
was told that the interview was voluntary and that he was free to
terminate it at any time. He indicated that he understood. He was
also told that the FBI was executing a search warrant at LMC, to
which he indicated that he had received a copy of the search
warrant. After being advised of the identities of the
investigating agents and the purpose of the interview, Lee provided
the following information:

       Lee resides at ████████████████████████████████
██████████. He can be reached via a cellular telephone number
█████████or via his home telephone number █████████████. He
started working for LMC in 1981. His current responsibilities as
Chief Financial Officer include handling all financial matters to
include payroll and accounting.

       Lee advised that LMC is owned by Keith Lindsey, who
serves as President of the company. Steve Scholfield, Rick
Zonneville, and Luis Cosio help run LMC. Robert Rice, who serves
as Controller also plays a very important part in the day-to-day
running of the business. Lindsey, Rice, Assistant Controller Mindy
Knok, and himself are authorized to pay bills. Regarding check
writing and wire transfers, Lindsey is the only person with single
signing authority. All other checks require the signatures of two
Manager (i.e. Scholfield, Zonneville, Cosio, or Lee).

       Lee and Scholfield are responsible for handling all
incoming and outgoing wire transfers. Lee conducts the majority of
LCM's wire transfers. Scholfield handles this duty when Lee is out
of the office or when Lee is unable to do so. Lindsey reviews a
report that is generated for all wire transactions.

       LMC sends incoming wire transfers to a LMC account at
Bank of America. LMC's main corporate account is at California
United Bank. Its account number is 025702. LMC uses this account
for all outgoing wires. This is the account LMC used to conduct

Investigation on   11/20/2008   at   Azusa, California

File # ██████████                              Date dictated _____

by   SA Christopher T. Dodson/ctd
     SA Bryan Willett

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

Lindsey_DOJ_022958

EXHIBIT F, Page 44

FD-302a (Rev. 10-6-95)

████████████████

Continuation of FD-302 of ___Steven Kacham Lee_____ , On _11/30/2008_ , Page ___2___

all the wire transfers to Grupo International De Asesores S.A. (Grupo).

LMC does some business with U.S. based customers, the majority of LMC's business is with international customers.  LMC has customers in Central America, South America, India, the Philippines, Canada, and several other countries.  LMC works with these customers through local, in country representatives or brokers.  The standard commission for brokers in most countries is 10 percent, though it is higher in some countries.  For example, In India the standard commission is 14 percent.  In the Philippines it is 17 percent.  Prior to 2001 or 2002, LMC paid the standard 10 percent commission to its Mexican representative.

Lee stated that most Mexican government contracts were given to the company providing the lowest bid.  During 2003, LMC employees flew to Mexico to attend a bid opening meeting in the hope that it would obtain the contract.  While Lee was not present he was provided the following information.  Employees of competing companies, including a Canadian company, were also present.  During the meeting, a Mexican broker named Enrique Aguilar entered the room, placed a bid for his client on the table, and left the room. Almost immediately, the meeting was ended and the companies told that the bid opening was being cancelled.  LMC employees related to Lee that Aguilar appeared to be the reason the meeting was ended and that he apparently was a person with significant influence.

After Lee was provided this information, he wanted to hire Aguilar as LMC's Mexican representative.  LMC's current representative was not working out particularly well.  Lee contracted Aguilar shortly thereafter.  Aguilar told Lee that he was working with a Canadian company, SBB, and could not simultaneously work with LMC.  Lee advised that LMC courted Aguilar for about a year.  During 2003 or 2004, Aguilar called Lee and asked if Lee was ready to talk.  LMC flew Aguilar to LMC's office in the United States.  Lee, Lindsey, and Aguilar met to discuss business.  Aguilar advised that he could get things done and he could obtain contracts between LMC and CFE.  He, however, required a thirty percent commission.  Lee stated that he and Lindsey knew the thirty percent commission was high, but asked no questions of Aguilar.  Lindsey and Lee agreed and hired Aguilar.  Aguilar's company was named Grupo.  Lee also stated that Aguilar was a medical doctor who found the brokerage business to be more profitable.

Lindsey_DOJ_022959

EXHIBIT F, Page 45

FD-302a (Rev. 10-6-95)

�ananananananananananananan

Continuation of FD-302 of ____Steven Kacham Lee_____, On 11/30/2008 , Page ___3___

    Using Aguilar, LMC began obtaining contracts for its
products from a Mexican utility company named Comision Federal De
Electricidad (CFE).  The subject of commission was never brought up
again after Aguilar delivered on the first couple of contracts.
Lee advised that LMC passed on Aguilar's entire 30 percent
commission to CFE.  LMC did not lower its own profit to ensure that
it's bid would be competitive.  LMC consistently obtained the
contracts even though CFE used a bidding process to award contracts
and presumably awarded its contracts to the lowest bidder.  Lee did
not find a reason to question this.  Lee routinely wired payment to
Aguilar from California United Bank account after receiving an
invoice from Aguilar.

    During 2006, the overwhelming majority of LMC's business
came from CFE contracts.  During that year, LMC received contracts
totaling approximately $15-18 million from CFE, via Aguilar.  CFE
primarily ordered Emergency Restoration System Towers from LMC.
Business increased so significantly that LMC institute three shifts
for production employees, to ensure that production would continue
24 hours a day.  Lee indicated that business dropped off
significantly with CFE and Aguilar after 2006.  Lee attributed this
to market saturation.  He acknowledged that CFE only needed a
certain number of emergency towers.

    Lee advised that he does not know anyone at CFE.  He
never spoke to CFE employees.  All such contact with CFE was
Aguilar's responsibility.  Aguilar further handled issues regarding
timely payment by CFE.  Lee said that at most, he might have
written a letter or two to CFE.  He said that he never spoke to an
individual named Nestor Moreno and had never heard of an individual
named Angela Aguilar.

    Lee acknowledged that Aguilar's commission was high, but
he did not question what Aguilar was doing to ensure that LMC
obtained CFE contracts.  Lee said that if Aguilar was using the
money to pay bribes, he had no idea.  Lee advised that he once was
asked to pay a bride to a Bangladesh official.  LMC representative
located in Bangladesh relayed that the government official could
ensure that LMC obtained a particular contract, but the official
wanted to be given a Nissan vehicle.  Lee said that he refused.

    Agent note: The interview was concluded quickly after
Lindsey's wife, Lela Lindsey, abruptly entered Lee's office
shouting.  She warned him that he should not be talking to
interviewers without the company's attorney being present.

**Lindsey_DOJ_022960**

FD-302a (Rev. 10-6-95)



Continuation of FD-302 of ___Steven Kacham Lee_____ , On _11/30/2008_ , Page ___4___

    Although Lee indicated that he wished to continue to speak to the
interviewing agents, he ceased the interview, stating he wanted to
calm Lela Lindsey down.

**Lindsey_DOJ_022961**

EXHIBIT F, Page 47