ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
DOUGLAS M. MILLER (SBN: 240398)
Assistant United States Attorney
NICOLA J. MRAZEK
JEFFREY A. GOLDBERG
Senior Trial Attorneys
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2216
     Facsimile:  (213) 894-6436
     Email: douglas.m.miller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR No. 10-1031(A)-AHM |
| Plaintiff, | ) <u>GOVERNMENT'S TRIAL BRIEF RESPONDING TO DEFENDANT ANGELA AGUILAR'S TRIAL BRIEF ON CUELLAR V. UNITED STATES</u> |
| v. | ) |
| ENRIQUE FAUSTINO AGUILAR NORIEGA, ANGELA MARIA GOMEZ AGUILAR, KEITH E. LINDSEY, STEVE K. LEE, and LINDSEY MANUFACTURING COMPANY, | ) Hearing: May 9, 2011, 8:30 a.m. (Courtroom 14) |
| Defendants. | ) |

     Plaintiff United States of America, by and through its attorneys of record, the United States Department of Justice, Criminal Division, Fraud Section, and the United States Attorney for the Central District of California (collectively, "the government"), hereby files its trial brief responding to defendant ANGELA AGUILAR's trial brief on <u>Cuellar v. United States</u>, 553 U.S. 550 (2008).

DATED:     May 8, 2011

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
DOUGLAS M. MILLER
Assistant United States Attorney

NICOLA J. MRAZEK
JEFFREY A. GOLDBERG
Senior Trial Attorneys
Criminal Division, Fraud Section

2

## MEMORANDUM OF POINTS AND AUTHORITIES

The government writes, one last time, concerning defendant ANGELA AGUILAR's motion for judgment of acquittal pursuant to Federal Rule of Evidence 29 to respond to new authorities raised by defendant for the first time after the second oral argument on her motion.  The government will be brief.

First, defendant's citation of <u>Cuellar v. United States</u> does not further her Rule 29 argument.  553 U.S. 550, 563 (2008). <u>Cuellar</u> held that the term "design" in 18 U.S.C. § 1956(a)(2)(B)(I) "means purpose or plan; <u>i.e.</u>, the intended aim of the transportation."  553 U.S. at 563.  Therefore, under <u>Cuellar</u>, "to obtain a conviction, the evidence [must] show that the <u>purpose</u> of the transportation was to conceal the funds not simply that the funds had been concealed during transportation." <u>United States v. Cedeño-Pérez</u>, 579 F.3d 54, 60 (1st Cir. 2009). The problem the government had in <u>Cuellar</u> was that though the defendant was arrested for having $81,000 of concealed cash in his car, the government did not know where this cash had come from or where this cash was going.  There was simply no proof as to the purpose of the transportation.  553 U.S. at 567. ("Although the evidence suggested that petitioner's transportation would have had the effect of concealing the funds, the evidence did not demonstrate that such concealment was the purpose of the transportation because, for instance, there was no evidence that petitioner knew about or intended the effect.").

The government's case against defendant stands in sharp contrast.  First, as an initial matter, defendant is charged with concealment money laundering involving financial transactions.

18 U.S.C. § 1956(a)(1)(B)(I).[1]  Although, <u>Cuellar</u> could have application to financial transactions cases, such applicability is likely rare.  In cases involving the transportation of funds, one can readily imagine situations involving concealing the transportation of funds without the purpose of the transportation being concealment.  Indeed, everyone who has traveled abroad and put funds into a money pouch on their person understands that there may be reasons for concealment of the transportation of funds (most obviously theft) completely unrelated to why the transportation is occurring (e.g., to buy souvenirs).  However, there are few situations where an individual would engage in a concealed financial transaction where the purpose of the financial transaction was not also concealment of some fact.

Second, the <u>purpose</u> of the transfers from LMC to Grupo to CFE officials including Nestor Moreno, namely bribery, has been the very focus of this trial.  Unlike in <u>Cuellar</u>, the jury knows where the funds in the Grupo account came from and where they went to and, specifically, that defendant knew the proceeds came from companies seeking to do business with CFE and that they were being used to benefit Nestor Moreno.

Third, with respect to the Ferrari transaction, the concealment took multiple steps, all with the aim to hide the

---

[1] As the Court is well aware, there are two kinds of concealment money laundering.  First, as charged in this case, there is concealment money laundering involving financial transactions.  18 U.S.C. § 1956(a)(1)(B)(I).  Second, as was charged in <u>Cuellar</u>, there is concealment money laundering involving transportation of monetary instruments.  18 U.S.C. § 1956(a)(2)(B)(I).

2

fact that the <u>nature</u> of the transaction was bribery, that the <u>source</u> of the proceeds for the Ferrari were U.S. and Canadian companies seeking business with CFE, and that Ferrari's true <u>owner</u> was Nestor Moreno. (1) As defendant knew, the funds for the Ferrari came from Grupo, her husband's unofficial company, incorporated in Panama. Defendant knew she was the only formal "officer" of Grupo, that Grupo used the her home address, and that Grupo had a brokerage (not a bank) account in Texas (not Mexico). (2) As defendant knew, the Ferrari was purchased by defendant with a check she signed, which though drawn on the Grupo account, did not list a business name or address on the check's face. (3) As defendant knew, the Ferrari was titled in her husband's name. (4) As defendant knew, Nestor Moreno took possession of the Ferrari.

The jury further can reasonably infer that Nestor Moreno was the actual, beneficial owner of this car from the fact that (1) Nestor Moreno was the only one permitted to pick up the Ferrari, (2) only he and ENRIQUE AGUILAR were permitted on the insurance to drive the Ferrari, (3) the AGUILARS never had or drove a Ferrari, (4) Nestor Moreno paid for the insurance for the Ferrari, (5) the address on the title of the Ferrari does not belong to the AGUILARS, (6) according to Nestor Moreno's American Express records, it can be inferred that he picked up the Ferrari, drove it to Vegas, and outfitted it at the Ferrari Store, and (7) the AGUILARS continued to assist in registering the Ferrari in California a year after the Ferrari's purchase, even though they did not live there.

Concealing that this civil servant had a Ferrari was the very essence of this transaction.  Imagine a law enforcement officer in Mexico searching for evidence of Nestor Moreno's corruption.  Even if such officer had heard rumors that Nestor Moreno owned a Ferrari in the United States, how would he find such evidence?  Nothing in Nestor Moreno's bank accounts would show that he had purchased a Ferrari.  Indeed, Nestor Moreno did not even pay his own U.S. American Express card bills, so following the uses of funds in Nestor Moreno's bank accounts would never lead back to Eastwood Insurance or the Las Vegas Ferrari store.  (Nor would the bank accounts of ENRIQUE AGUILAR or Macquinaria Unida.)  If such an officer sent an MLAT request to the United States asking for a search of California DMV records or Ferrari dealership records for Ferrari's purchased or titled in Nestor Moreno's name, nothing would be found.  The Ferrari transaction is a classic example of concealment.

Defendant cites <u>United States v. Sanders</u>, 928 F.2d 940 (10th Cir. 1991), in support of her motion.  (CR 499 at 5).  However, <u>Sanders</u> involved a case where the defendants bought themselves vehicles purchased with funds in their own names, personally handled the transactions, and conspicuously used the cars. <u>Sanders</u>, 928 F.2d at 945-96.  The only unusual thing about one of the transactions was that one of the vehicles was titled in the defendants' daughter's name, but she was present for the purchase of the vehicle.  <u>Id.</u> at 946.  The court in <u>Sanders</u> explained that it rejected the government's theory that the concealment money laundering statute "should be interpreted to broadly encompass

all transactions, however ordinary on their face, which involve the proceeds of unlawful activity" so as not to convert the statute into a "'money spending statute.'" Id.  Likewise, the counts reversed in United States v. Lovett, involved ordinary purchases from illegal proceeds. 964 F.2d 1029, 1033-37 (10th Cir. 1992).[2]  In contrast, there was nothing ordinary about the Ferrari purchase because the AGUILARS were not the true purchasers.

In sum, there is more than enough evidence taken in the light most favorable to the government that the purpose of the Ferrari transaction was concealment to sustain a conviction on Count Eight of the first superseding indictment.[3]  The government respectfully renews its request that defendant's Rule 29 motion for judgment of acquittal be denied.

---

[2] Defendant's other citations are equally unavailing. Indeed, other than the two cases discussed above, the defendant cites cases that found sufficient evidence to sustain the concealment money laundering convictions.  See, e.g., United States v. Shepard, 396 F.3d 116, 1112-23 (10th Cir. 2005) (sustaining a conviction where transactions "were structured in a way to avoid attention, used third parties to conceal the real owner, and involved highly irregular features.") (internal quotations omitted).

[3] As the Court is aware, concealment money laundering involving financial transactions is only one of the objects of the 18 U.S.C. § 1956(h) conspiracy in Count Seven.  Therefore, even if Cuellar changed the Court's analysis of the case against defendant (it should not), the evidence taken in the light most favorable to the government would still allow a reasonable jury to convict defendant for conspiring, for example, to commit violations of 18 U.S.C. § 1957, which requires no evidence of concealment.